## PIERRIERO v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1921.)

### No. 1861.

1. **Criminal law** ⊂⇒307—**Possession of narcotics may be made prima facie evidence of crime.**

Though the mere possession of narcotic drugs cannot of itself be made a crime, it may be made prima facie evidence of some other offense, as it was by Harrison Narcotic Act, § 1, as amended by Revenue Act 1918, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g).

2. **Poisons** ⊂⇒9—**Allegation in indictment that defendant sold and distributed narcotics implies he was within class required to register.**

An allegation in the indictment that defendant sold, dispensed, and distributed narcotics implies that he was within the class required to register by Harrison Narcotic Act, § 1, as amended by Revenue Act 1918, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), and, with proof that narcotics were found in his possession, is sufficient allegation and proof that he was required to register to place on him a burden of showing that he was not in the class required to register and that his possession was not unlawful.

3. **Poisons** ⊂⇒9—**Instruction that finding narcotics in defendant's room was prima facie evidence held not error.**

In a prosecution for violating Harrison Narcotic Act, § 1, as amended by Revenue Act 1918, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), where it was undisputed that narcotics were found in defendant's room, but he denied any knowledge of them, and offered evidence that others had access to his room, a charge that if the narcotics were found in defendant's possession—that is, in the room occupied by him—such possession was prima facie evidence of purchase and sale by him, was not erroneous, as declaring the finding of the narcotics in the room established his possession, where immediately after that paragraph the court directly charged that, in determining whether the narcotics were found in defendant's possession, the jury should consider all the circumstances in the case, including the fact, if so found, that other persons had access to the room.

Webb, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Manuel Pierriero was convicted of violating the Harrison Narcotic Act, and he brings error. Affirmed.

J. S. Barron, of Norfolk, Va., for plaintiff in error.

Hiram M. Smith, Sp. Asst. U. S. Atty., of Richmond, Va.

Before KNAPP and WOODS, Circuit Judges, and WEBB, District Judge.

KNAPP, Circuit Judge. Plaintiff in error, herein called defendant, was convicted of a violation of section 1 of the Harrison Narcotic

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Act, as amended by section 1006 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6287g).

Defendant is an engineer, and at the time of his arrest was employed by the United Dredging Company. He had leased the premises known as Nos. 215 and 217 Court street, Norfolk, Va., but had rented No. 215 to one John Corey, who in turn had sublet certain rooms to men named Price and Meeks. Meeks was jointly indicted with defendant, but as to him the indictment was nolle prossed. Pierriero lived in an upstairs front room of No. 217, renting other rooms in that house to different men. There was a connecting door on the ground floor between No. 215 and No. 217, and defendant stated that the room occupied by him was always unlocked and open to any one who desired to enter.

Revenue officers testified that on March 16, 1920, between 6:30 and 6:45 p. m., they saw defendant, carrying a black handbag, come from the rear up a narrow alley which ran alongside No. 215 and enter that house by a side door. These officers were standing on the opposite side of Court street some 80 feet distant. An hour or two later, with the aid of certain policemen, they raided the premises, arrested Pierriero in his room, and took possession of an unlocked handbag, which was discovered protruding from a closet, and which was similar in appearance to the one that defendant was seen carrying. In the handbag was found a large quantity of unstamped cocaine and gum opium, of the estimated value of $60,000 or more, at prices said to be paid by addicts. One of the officers, unknown to defendant, secured a bunch of keys which the latter had taken from his belt. When these keys were shown him at the trial, he said they belonged to his wife, who had left them when she went to New York, and pointed out one which he declared he had not seen before, and which was found to fit the lock on the handbag. He had previously stated that his keys were in the possession of his brother-in-law. He also said that the handbag did not belong to him, that he had never seen it before, and that he did not know it was in his room.

The amended section under which defendant was indicted imposes a tax on certain named drugs, to be represented by appropriate stamps so affixed to the container as to securely seal the same, and provides:

"It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs except in the original stamped package or from the original stamped package; *and the absence of appropriate tax paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found.*" (Italics ours.)

[1] 1. It is contended that defendant was wrongfully convicted because the government attempted to prove nothing more than possession, and possession cannot of itself be made a crime. United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854. But beyond doubt possession may be made prima facie evidence of some other offense, and the courts have frequently so held. Luria v. United States, 231 U. S. 9, 25, 34 Sup. Ct. 10, 58 L. Ed. 101; Gee Woe v. United States, 250 Fed. 428, 162 C.

C. A. 498; Baender v. United States, 260 Fed. 832, 171 C. C. A. 558; Dean v. United States (C. C. A.) 266 Fed. 694. The last-named case arose under the statute here involved and is directly in point.

[2] 2. It is also contended that to convict under the amended section it must be alleged and proved "that the accused is one of those persons required to register and pay the special tax," even if untaxed and unstamped drugs be found in his possession. We are not of that opinion. The clause above quoted includes, not only those who purchase, but also those who sell and dispense, and the latter are specifically required to register and pay the special tax. Therefore an indictment in the language of the statute, charging that defendant "did sell, dispense and distribute," as in this case, alleges by necessary implication that he is within the class required to register. And if there be proof that unstamped drugs were found in his possession, the clause in question creates the presumption that he has violated the amended section. The burden is then upon him to show that he is not in the class required to register, and that his possession was not unlawful, as was held to be the case in United States v. Wilson (D. C.) 225 Fed. 82.

[3] 3. Exception is taken to following instruction to the jury:

"The court charges you that if you believe from the evidence that the inhibited article mentioned in the indictment not in the original stamped package, or from the original stamped package, without appropriate tax-paid stamps thereon, was in the possession of the defendant—that is to say, in a place in the room occupied by him in his residence and place of business—then such possession constitutes prima facie evidence of the purchase, sale, dispensing, and distribution of the drugs in question by the accused, as charged in the indictment, and would warrant his conviction of the offense charged."

The contention here is that the facts recited in this instruction, "that is to say, in a place in the room occupied by him in his residence and place of business," were in effect held to establish defendant's possession of the unstamped drugs as matter of law, and thus to virtually direct a verdict of guilty. Whether or not the defendant was in possession of the handbag found in his room was of course the principal matter in dispute, and if nothing else had been said to the jury on the subject of possession a somewhat serious question would be presented. But immediately following the paragraph quoted the learned judge further said:

"In determining whether the drugs in question, not from the original package and in the unstamped condition in question were found in the possession of the defendant, you should take into account all the facts and circumstances in the case including the fact, if such you believe to be true, that persons other than the accused had access to the room in which the drugs were found and give such consideration thereto as you think the circumstances warrant. * * *

"The court further charges you that you must consider this question in the light of all the facts and circumstances detailed to you and the reasonable and fair inferences to be drawn therefrom. You should take into account the manner and deportment of the witnesses when on the stand, their interest, if any, to give or withhold the truth, the reasonableness or unreasonableness of the explanation made of the possession of the drugs, as well at the time of the search of the premises and finding of the drugs as that made upon the witness stand, and if, upon the whole testimony, you are satisfied that

the drugs found belong to the defendant, or were in his possession and control at the time when found, you should find him guilty; otherwise he should be acquitted."

Taking into account the entire charge on the subject of possession, it seems perfectly clear that the question whether defendant was in possession of the handbag found in his room was distinctly and fairly submitted to the jury as a question of fact to be determined by them, and there is no ground for claiming that they did not so understand the instruction. The circumstantial evidence on this issue warranted a finding against defendant, notwithstanding his denial, and the objection here considered is without substantial merit.

Of the rejected instructions it is enough to say in a word that, so far as material, they had been covered in the general charge, and defendant was not entitled to have them repeated.

The record discloses no reversible error and the judgment will be affirmed.

WEBB, District Judge (dissenting). I think a new trial should be awarded in this case for errors committed by the court below in his charge to the jury. The charge consisted of eight paragraphs. The first paragraph merely quoted the statute under which the defendant was indicted. In the second paragraph the court said to the jury:

"If you believe from the evidence that the inhibited article mentioned * * * was in the possession of the defendant—that is to say, *in a place in the room occupied by him in his residence and place of business*—then such possession constitutes *prima facie* evidence of the purchase, sale, dispensing, and distribution of the drugs in question by the accused, * * * and would warrant his conviction of the offense charged."

This is an unusual statute, in that it does not undertake to prohibit the possession of opium, but does prohibit its purchase, sale, dispensing, or distribution, and makes the possession of the drug prima facie evidence of such purchase, sale, dispensing, and distribution. The penalties for its violation are severe. In the above-quoted portion of the judge's charge he told the jury what possession was; that is, if a drug was found in a room occupied by the defendant in his residence and place of business, then that was such possession as constituted prima facie evidence, and would warrant his conviction of the offense. The defendant did not deny that the opium was found in his room, where he slept, and consequently the judge's charge amounted to telling the jury practically that the defendant admitted his guilt, because he admitted that the opium was found in a grip in a room where he slept. In other words, it seems to me that the court took away from the jury the right to find the fact of possession, because under this highly penal statute the fact of possession is one for the jury to find under proper instructions. Guilty knowledge of the presence of the inhibited drug played no part in the court's instructions. I think the jury should have been told that, before a prima facie case was made out against the defendant, they should find beyond a reasonable doubt that he *knowingly* possessed the opium, and the question should have been left to the jury to say whether or not he

did knowingly possess the drug; but, instead, the jury were told in effect that, if the opium was found where the defendant admitted it was found, then they would be warranted in finding the defendant guilty of purchasing, selling, dispensing, and distributing the drug. I cannot think that this error was cured by the subsequent paragraphs of the judge's charge.

In the fourth paragraph of the court's charge we find this language:

"The court further charges you that you must consider this question in the light of all the facts and circumstances detailed to you and the reasonable and fair inferences to be drawn therefrom. You should take into account the manner and deportment of the witnesses when on the stand, their interest, if any, to give or withhold the truth, the reasonableness or unreasonableness of the explanation made of the possession of the drugs. as well at the time of the search of the premises and finding of the drugs, as that made upon the witness stand, and if, upon the whole testimony, you are satisfied that the drugs found *belong to the defendant, or were in his possession and control at the time when found,* you should find him guilty; otherwise, he should be acquitted."

In other words, the court told the jury that, if they were satisfied that the drugs were found in the room which the defendant occupied, then they should find the defendant guilty, because the court, in paragraph (B), or 2, of his charge told the jury that the unlawful possession was complete, if the opium was found in a place in the room occupied by the defendant. This instruction seems to me to be manifest error, for the reason that the court should simply have told the jury that, if they were satisfied that the drugs were in his possession and he *knew* that they were in his possession, then this fact would raise a prima facie presumption that the defendant had violated the law. It must be remembered that the defendant had testified and stated that he did not know the drugs were in the room, and that they did not belong to him. The court, therefore, took the question of guilty knowledge from the jury. It seems to me that, if a person were indicted for having half a pound of opium in his overcoat pocket, and denied that he knew the opium was there, and offered to prove that on a thickly crowded street some miscreant had dropped the opium into his overcoat pocket without his knowledge, that he would have the right to present the question of his guilty knowledge to the jury, and the court should certainly tell the jury that the defendant would not be guilty, although the opium was in his overcoat pocket, if some one else had placed it there without his knowledge. But in the case at bar the court precluded this very vital question by telling the jury that, if the opium was found in the defendant's room, that fact alone was sufficient to convict him.

Again, in paragraph 5 of the judge's charge, marked (E) in the record, the court again tells the jury:

"This is a criminal case, and has to be proven by the government beyond a reasonable doubt, *save that the government has the right to rely on the prima facie presumption arising from the possession of the inhibited drugs by the defendant,* if such you believe to be the fact, until the defendant has properly accounted for the presence of the drugs where found."

I cannot get away from the belief that the jury under the foregoing instructions felt that they should find the defendant guilty upon the judge's charge, and did find him guilty because the judge had told them what possession was and that possession raised a prima facie presumption of the defendant's guilt.

The evidence shows that a number of other persons frequented the room in which the drug was found, and with these facts proven, and the defendant denying any knowledge of the presence of the drug in question, the question of guilty knowledge certainly should have been submitted to the jury, and the jury should have been told that a prima facie case was not made out against the defendant, unless the opium was in the defendant's possession with his knowledge. When the court charged the jury that the case against the defendant had to be proven by the government beyond a reasonable doubt, he practically withdrew that instruction when he added the words, "save that the government has the right to rely on the prima facie presumption arising from the possession of the inhibited drugs;" for, in the second paragraph of his charge, he had in effect told the jury that the finding of the drugs where the defendant admitted they were found, and about which fact there was no controversy, raised such a presumption of guilt as would warrant the jury in convicting the defendant. It seems to me that the court below in substance charged the jury that the defendant was guilty because the opium was found in the room where he slept. It also seems to me that the court placed the burden of proving his innocence upon the defendant; whereas, after the defendant had testified, and denied any knowledge of the possession of the drug, then the case was like any other criminal trial, and the burden was upon the government to satisfy the jury beyond a reasonable doubt, not only of the guilty possession of the drug, but of its purchase, sale, dispensing, or distribution, and the following request of the defendant for instructions should have been given by the court, to wit:

"The jury are further charged that a person charged with the commission of a crime is presumed to be innocent, and that presumption follows him throughout every stage of the prosecution. * * * There is no shifting of the burden of proof. It remains upon the government throughout the trial. The evidence may shift from one side to the other, and the government may establish such a state of facts as must result in a conviction, unless the presumption they raise be met by evidence; but when the evidence is all in, if, upon a consideration of it as a whole, the jury entertains a reasonable doubt as to the guilt of the accused, they must find him not guilty, as the government has not sustained the burden of establishing his guilt beyond a reasonable doubt. The accused is not required to prove his innocence."

Holding these views, I think a new trial should be awarded.