## SULLIVAN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 19, 1922.)

No. 5891.

1. **Poisons ⬅9—Government required to prove that defendant druggist procured drugs by means of unlawful use of physician's order form.**

In a prosecution for obtaining morphine and cocaine from wholesale drug concern for other purposes than the use, sale, and distribution thereof in the conduct of a drug business, or in the practice of his profession, by means of a named physician's order form, claimed to have been stolen from such physician, in violation of the Anti-Narcotic Act (Comp. St. § 6287h), the government was required to prove that the defendant knowingly and unlawfully used such order form to procure, and by means thereof did procure, the drugs.

2. **Criminal law ⬅308—Defendant presumed innocent.**

A defendant is presumed innocent until proved guilty beyond a reasonable doubt.

3. **Criminal law ⬅753(2)—Court required to direct verdict for accused unless there is substantial evidence of facts which exclude every hypothesis but that of guilt.**

Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused.

4. **Criminal law ⬅1159(2)—Judgment reversed by appellate court where all substantial evidence is as consistent with innocence as with guilt.**

Where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse the judgment of conviction.

5. **Poisons ⬅9—Evidence held insufficient to sustain conviction for obtaining drugs by means of stolen physician's order form.**

In prosecution for obtaining morphine and cocaine from a wholesale drug concern by means of an order form claimed to have been stolen from a physician for other purposes than the use, sale, and distribution thereof in the conduct of a lawful business or in the legitimate practice of his profession, in violation of the Anti-Narcotic Act (Comp. St. § 6287h), evidence *held* insufficient to sustain a conviction.

In Error to the District Court of the United States for the Western District of Oklahoma; Martin J. Wade, Judge.

H. E. Sullivan was convicted of violating the Anti-Narcotic Act, and he brings error. Reversed and remanded, with directions.

James A. Embry, of Chandler, Okl., and S. A. Horton, of Oklahoma City, Okl., for plaintiff in error.

W. A. Maurer, U. S. Atty., and J. W. Scothorn, Asst. U. S. Atty., both of Oklahoma City, Okl., for defendant in error.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. This writ of error challenges the legality of the trial and proceedings in this case, which resulted in the conviction of H. E. Sullivan, the defendant below, and his sentence to imprisonment in the federal penitentiary for 18 months for his alleged unlawful and felonious obtaining, in violation of the Anti-Narcotic

Act (U. S. Comp. Stat. § 6287h), for other purposes than the use, sale, and distribution thereof by him in the conduct of a lawful business in the drugs or in the legitimate practice of his profession from John Schapp & Sons at Ft. Smith, Ark., four ounces of morphine sulphate and three drams of cocaine, by means of an order form lawfully sold and delivered to Dr. L. M. Harrison, a registered physician of Hominy, Okl.

The question which the record in this case presents is whether or not there was substantial evidence at the trial that the defendant, Sullivan, used the order form to Dr. Harrison, the means, the use of which is denounced by the act, in obtaining or receiving the drugs. There was no conflict in the evidence, and it disclosed these facts: Some one stole some order forms from Dr. L. M. Harrison. On one of them some one other than the doctor signed his name, the address Warwick, Okl., an order for the morphine sulphate and cocaine described in the indictment, inclosed them in a letter dated Warwick, Okl., March 27, 1920, with a draft for $68 and a request to ship the narcotics by express, and mailed this letter and its contents to John Schapp & Sons, wholesale druggists at Ft. Smith, Ark. There was no evidence in the case that the defendant did any of these things. John Schapp & Sons cashed the draft and sent the narcotics by express, addressed to L. M. Harrison, Warwick, Okl. The express package containing them arrived at Warwick about 5 in the afternoon of March 30, 1920. It was taken from the train by the express agent and placed upon the truck to be taken to the railway station. The defendant, Sullivan, was on the platform near the truck. He picked up the package and walked from 3 to 12 feet towards the station when a deputy sheriff arrested him. He threw the package on the truck and said it was not his. He had been in Warwick during that day and had inquired at the post office once or twice whether there was any mail for Dr. L. M. Harrison or whether Dr. Harrison had received his mail. The county attorney took the express package and receipted for it to the express company. There was no other evidence that the defendant, Sullivan, obtained or aided any one in obtaining these drugs by means of the Harrison order form, or by means of any other order forms. The defendant, Sullivan, testified that in March, 1920, he had been for three years, and then was, addicted to the use of morphine and other narcotics, that he was not a wholesaler or retailer thereof; that he never sold a speck of them in his life; that he had been a bookkeeper; that he lived with his mother in Oklahoma City; that he had become acquainted in Oklahoma City with a man who said his name was Harrison who was a peddler of narcotics and from whom he had bought some of them for his own use; that this man Harrison had told him to meet him on March 30, 1920, at Warwick; that he (Harrison) would then have some morphine there that he could furnish to him for his own use, and that he went to Warwick on that day to meet this Harrison and get some morphine; that he hired Curly Weiner, who lived in Oklahoma City, had a car, and was an addict and a dealer in narcotics, to drive them to Warwick; that he met the trains there on March 30, 1920, inquired at the post office for mail for

Harrison, and stayed at Warwick all day to meet him, but never found him; that he never claimed the express package, never offered to receipt for it, told the officers on his arrest and constantly thereafter that it was not his, that his name was H. E. Sullivan, and gave them his address in Oklahoma City. He testified that he never saw or signed a Harrison order form, and that he never sent any mail to John Schapp & Sons. The witnesses for the government corroborated Sullivan's testimony that when he was arrested and after his arrest he told them that the express package was not his, that he gave them his name and his residence in Oklahoma City, and they testified that he then gave to them the same explanation of his presence in Warwick that he testified to at the trial. No witness came to contradict the testimony of the defendant, and there was no other evidence at the trial which has not now been recited which ought to or could lawfully change the result which should have followed from the evidence to which attention has been called.

The indictment under which the defendant was tried contained four counts. The first was for carrying on the business of a retail dealer in opium and cocoa leaves and the derivatives therefrom, in violation of the Anti-Narcotic Act; the second was for carrying on the business of a wholesale dealer therein, in violation of that act; the third was for the alleged offense which has been discussed; and the fourth was for sending and shipping the four ounces of morphine sulphate and the three drams of cocaine described in the third count from Ft. Smith to L. M. Harrison in Warwick. Throughout the trial the defendant was subjected to the defense of all these counts. The government produced no substantial evidence in support of the first, second, or fourth counts, but the court, at the close of the government's case, refused to sustain a demurrer to either of them. At the conclusion of the evidence the court withdrew the first and second counts from the jury and submitted to them the third and fourth counts. The jury found the defendant guilty under both counts, but in this court the United States attorney writes in his brief that "the government is not insisting on count 4," and as to the proof under count 3 that—

"While the evidence is entirely circumstantial, we think it sufficient, as it evidently convinced the jury beyond a reasonable doubt, that plaintiff in error had in some manner procured the order form which was filled out in the name of Dr. L. M. Harrison, and sent to Schapp & Sons at Ft. Smith, Ark., and that he came to Warwick on that day expecting the narcotics to arrive there on that day, and no doubt expected to get mail in the name of Dr. L. M. Harrison in reply to the order form sent to Schapp & Sons at Ft. Smith, Arkansas."

[1-4] But it was essential to Sullivan's lawful conviction that there should be proof beyond a reasonable doubt that he knowingly and unlawfully used the Harrison order form to procure, and that by means thereof he did receive the express package of drugs. The burden was upon the government to make this proof. There was a legal presumption that Sullivan was innocent of this charge until he was proven to be guilty thereof beyond a reasonable doubt. There was no direct evidence that he ever saw, or had, or signed, or used that or any other order form to procure these or any other drugs, and he never claimed

these. All the evidence, if any there was against him, was circumstantial.

"And evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction." Union Pacific Coal Co. v. United States, 173 Fed. 737, 740, 97 C. C. A. 578; United States Fidelity Guaranty Co. v. Des Moines National Bank, 145 Fed. 273, 279, 74 C. C. A. 553; Vernon v. United States, 146 Fed. 121, 123, 76 C. C. A. 547; Sherman v. United States (C. C. A.) 268 Fed. 516, 518; Garst v. United States, 180 Fed. 339, 343, 103 C. C. A. 469; United States v. Richards (D. C.) 149 Fed. 443, 454.

[5] The result is that there was no substantial evidence in this case to sustain the verdict and judgment against the defendant: (1) Because there was no substantial evidence that he ever used the Harrison order form to get the drugs, or that he ever saw it, signed it, mailed it, or knew there ever was such an order form before his arrest; and (2) because there was no substantial evidence to exclude the reasonable hypothesis that was sustained by the presumption of his innocence, and by his testimony that he was in Warwick on the day of his arrest because a peddler of narcotics who had told him his name was Harrison had also told him to meet him on that day at Warwick and he would have some morphine which he could sell him for his own use.

When the record in this case is carefully read and deliberately considered, it leaves no doubt that the only real basis for the verdict and judgment, the indictment and the prosecution in this case, was suspicion. An addict on the platform of a railroad station, anxious to get morphine for his own use, picks up an express package on the truck of the express company which appears on its face to have been sent by wholesale druggists to a physician, looks at the address, and walks with it from 3 to 12 feet towards the railway station. An officer of the law then arrests him, he puts the package back on the truck, declares that it is not his, gives his correct name and residence, and a reasonable explanation for his presence and action. Officers seize the package, find the Harrison order form, the drugs, the order for them, and a letter from Warwick to the wholesale druggists. The addict lives in Oklahoma City, but the officers suspect that he wrote the letter to the wholesale druggists dated at Warwick, that he forged the name of Dr. L. M. Harrison upon the order, and that he purchased and sent the draft for $68 which was inclosed in the letter. They search out Dr. L. M. Harrison, who originally owned the order form, and learn that this order form was stolen from him by some one, and that his name was forged upon it. They then suspect that this poor addict stole the order, committed the forgery, bought the draft, and used the order to have this package of drugs sent from the wholesale druggists to Warwick, Okl. And then their imaginations and suspicions take fire and they seem clearly to see that this addict is a retail dealer and a wholesale dealer in narcotics, and they indict him and compel him to stand trial: (1) For unlawfully carrying on a wholesale business; (2) for unlawfully carrying on a retail business in nar-

cotics; (3) for using the Harrison order form to receive four ounces of morphine and three drams of cocaine; and (4) for shipping this morphine and cocaine from Ft. Smith to Warwick. And this vast fabric of suspicion and imagination rests upon the simple fact that the defendant picked up the small express package, walked a few steps toward the station with it, was arrested by the deputy sheriff, and put it back on the truck, and said that it was not his. "Behold what a great matter a little fire kindleth." But, if that simple act was substantial evidence that the defendant used the Harrison order form to get the package, it was like substantial evidence that he obtained it by larceny and used it by forgery. Fortunately the law sternly forbids the conviction of the accused upon suspicion. The defendant ought never to have been indicted or prosecuted upon the evidence in this case, and the sentence and judgment against him must be reversed, and the case must be remanded to the court below, with directions to set aside the verdict and grant a new trial.