## EZZARD v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. August 4, 1925.)

No. 6679.

**1. Poisons ☞9—Presumption arising from possession of drugs rebuttable.**

The inference or presumption, arising from defendant's possession of drugs, that he was wholesale dealer therein, as provided by Act Dec. 17, 1914, § 8 (Comp. St. § 6287n), making such possession presumptive evidence of violation of section 1, which was amended by Act Feb. 24, 1919, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), is rebuttable, inasmuch as defendant's possession or control may have been innocent, and not for criminal purpose.

**2. Poisons ☞9—Statute making possession presumptive evidence of violation not intended to make criminal innocent possession.**

Act Dec. 17, 1914, § 8 (Comp. St. § 6287n), providing that possession or control of drugs shall be presumptive evidence of violation of provisions of section 1 of the act (amended by Act Feb. 24, 1919, § 1006 [Comp. St. Ann. Supp. 1919, § 6287g]), did not intend to include and make criminal a possession which is not conscious and willing.

**3. Criminal law ☞324, 552(1)—"Presumptive evidence" defined; "circumstantial evidence" defined.**

"Presumptive evidence" is indirect or circumstantial evidence. "Circumstantial evidence" is evidence which is not direct and positive.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Circumstantial Evidence; Presumptive Evidence.]

**4. Criminal law ☞324—When substantial proof is made contrary to fact presumed, presumption is rebutted.**

Presumptions of fact are not evidence; they are the result of evidence, and raised to supply lack of proof; and where substantial proof is made contrary to such presumption, it is rebutted.

**5. Criminal law ☞327—Presumption may not fix burden of proof in a criminal case.**

Although in a civil case presumptions may sometimes fix burden of proof, they may not do so in a criminal case on the main issue; for there, on a plea of not guilty, the burden and quantum of proof to establish corpus delicti and defendant's guilt never shifts.

**6. Criminal law ⬤⟹563—Where possession is offense charged, and defendant's possession shown, verdict of guilty will stand, in absence of proof establishing innocent possession.**

Where possession is the offense charged, the corpus delicti, and defendant's possession is shown, a verdict of guilty will stand, in the absence of proof establishing an innocent possession.

**7. Criminal law ⬤⟹327—In no condition of proof is it permissible to instruct jury that duty is on defendant to establish innocence.**

A prima facie case is unknown in criminal procedure, and in no condition of proof is it permissible to instruct a jury that it has become the duty of defendant to establish his innocence to obtain an acquittal.

**8. Criminal law ⬤⟹324—Presumption in criminal case cannot be given greater weight than in civil case.**

Presumption in criminal case cannot be given greater weight than in civil case.

**9. Criminal law ⬤⟹324—Law attaches slight consideration to presumption, in face of credible testimony leading to a contrary conclusion, and issue should be decided on testimony, and not presumption.**

Though weight of presumptions is for jury, law attaches slight consideration to them, in face of credible testimony leading to a contrary conclusion; and, where there is such contrary testimony, issue should be decided on testimony, and not on presumption, when latter stands without support from other circumstances.

**10. Poisons ⬤⟹9—Evidence of unlawful dealing in drugs held insufficient.**

In prosecution for dealing in drugs in violation of Act Dec. 17, 1914, § 1, as amended by Act Feb. 24, 1919, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), held, that proof in case including presumptions, weighed so heavily in favor of defendant's innocence, and was more consistent with innocence than guilt, that it required reversal of conviction.

**11. Criminal law ⬤⟹552(3)—To sustain conviction on circumstantial evidence, proof must exclude every reasonable hypothesis of innocence.**

In order to sustain conviction on circumstantial evidence, proof must not only be consistent with defendant's guilt, but it must exclude every reasonable hypothesis of his innocence.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

W. T. Ezzard was convicted of dealing in narcotics, and he brings error. Reversed and remanded.

B. F. Williams and J. E. Luttrell, both of Norman, Okl., and S. A. Horton, of Oklahoma City, Okl., for plaintiff in error.

W. A. Maurer, U. S. Atty., and James A. Ingraham and J. W. Scothorn, Asst. U. S. Attys., all of Oklahoma City, Okl.

Before STONE and LEWIS, Circuit Judges, and SCOTT, District Judge.

LEWIS, Circuit Judge. After trial and verdict of guilty defendant, plaintiff in error here, was sentenced to imprisonment and to pay a fine for violation of section 1 of the Act of December 17, 1914 (38 Stat. 785), as amended by the Act of February 24, 1919, § 1006 (40 Stat. 1130 [Comp. St. Ann. Supp. 1919, § 6287g]). The indictment charged that defendant did "unlawfully, knowingly, willfully and feloniously deal in certain derivatives of opium and coco leaves, to wit, about one hundred five (105) ounces morphine sulphate and three (3) ounces cocaine hydrochloride, without having registered with the Collector of Internal Revenue for the District of Oklahoma and paid the special tax as required by the Act of Congress of December 17, 1914, as amended by sections 1006 and 1007 of the Revenue Act of 1918; the said W. T. Ezzard then and there being a wholesale dealer in morphine and cocaine and a person required to so register and pay said special tax as aforesaid."

At the time of his arrest by police officers defendant had in his automobile a trunk in which were the drugs named in the indictment. He had just gotten the trunk from the Santa Fé Railway station in Oklahoma City, under circumstances hereinafter stated. There was no evidence, direct or indirect, that Ezzard was then or ever had been a wholesale dealer in narcotic drugs, other than the fact that the trunk in his possession contained morphine and cocaine. He had not registered and paid the tax, but if not a dealer he was under no duty to do so. Section 1 of the act on which the indictment is based defines a wholesale dealer and the crime charged thus:

"Every person who sells or offers for sale any of said drugs in the original stamped packages, as hereinafter provided, shall be deemed a wholesale dealer. * * * It shall be unlawful for any person required to register under the provisions of this act to import, manufacture, produce, compound, sell, deal in, dispense, distribute, administer, or give away any of the aforesaid drugs without having registered and paid the special tax as imposed by this section."

Section 8 of the act (Comp. St. § 6287n) provides that possession or control of the drug shall be presumptive evidence of a violation of the provisions of section 1 of the

act. This is but a declaration of a rule of evidence, which doubtless would have been applied by the court without legislative enactment. In Insurance Co. v. Weide, 11 Wall. 438, 441 (20 L. Ed. 197), it is said:

"A presumption is an inference as to the existence of a fact not actually known, arising from its usual connection with another which is known."

[1-3] There was no proof that Ezzard was a wholesale dealer; and, in order to sustain the verdict of guilty, it was and is necessary to infer that the defendant was a wholesale dealer from the proven fact that he had possession of the drugs. That inference or presumption is rebuttable, defendant's possession or control may have been innocent and not for the criminal purpose charged. The statute here, as the one construed in Beander v. Barnett, 255 U. S. 224, 41 S. Ct. 271, 65 L. Ed. 597, "is not intended to include and make criminal a possession which is not conscious and willing." Presumptive evidence is said to be indirect or circumstantial evidence. Best on Evidence (Morgan's Ed.) §§ 27, 293. Starkie on Evidence, vol. 1 (7th Amer. Ed.) side p. 558: "Circumstantial, or, as it is frequently termed, presumptive evidence, is any which is not direct and positive."

Against the case thus made by the prosecution, resting on the presumption or inference that Ezzard was a wholesale dealer, he offered uncontradicted proof that he went for the trunk as an accommodation and had no knowledge or information as to its contents, and he thus claimed that the presumption was rebutted and overthrown. In substance he and his witnesses, all unimpeached and uncontradicted, testified to these facts: He was a farmer residing twenty miles or more from Oklahoma City. While at breakfast one morning about 6:30 a real estate agent in the city, who had in hand for Ezzard a transaction in real estate, telephoned him to come to Oklahoma City at once in connection with that transaction. Without that call he would not have gone to the city. On his way he crossed the Canadian river. A bridge was being constructed at that point and there were tents and temporary buildings for the use of the men employed there. Ezzard stopped after crossing the river on account of some trouble with his automobile, and got out to fix it. A woman came to him from the direction of the tents and asked him if he would bring back with him a trunk at the Santa Fé Railway station, which she said belonged to one of the boys in the camp. He consented to do so, and she gave him a check

for the trunk. When he reached the city he went first to the real estate agent's office, then to a bank which had some interest in the real estate transaction, and then to the Santa Fé station. There he surrendered the check, obtained the trunk and put it in his automobile. The check had been issued by the New York Central Railway at New York City. Ezzard had never been in New York City, nor out of Oklahoma for several years. The trunk had become unlocked, and it was discovered before Ezzard came for it that it contained the drugs. It was watched and when Ezzard started away with it he was followed by policemen in another automobile. After he had gotten about five miles out of the city on his way home they stopped him, arrested him, took him and his automobile back to the city and placed him in jail. They asked him when they arrested him about the trunk, and he told them he was taking it to a woman at the bridge, and insisted that they go with him there for the purpose of verifying his statement. They declined to do so. He was released from custody a day or so later, but was then unable to find the woman. He made several visits to the bridge camp for that purpose, and was told by the keeper of the commissary and by the ferryman that a woman had been there, but she had gone away. He testified that he had never had anything to do with narcotics and would not have known what the drugs were if he had seen them; that he did not know they were in the trunk; had no knowledge of its contents. Another witness, who crossed the river at the same place earlier in the morning than Ezzard crossed it, testified that a woman there asked him if he would bring a trunk out from Oklahoma City for her; that he was in a hurry and declined to do so. A deputy sheriff testified that two women whose father lived in the vicinity of the river crossing were in and out of that neighborhood from time to time; that he had arrested them on several occasions, once for being implicated in the theft of an automobile, once for being drunk, and for other disreputable conduct; that he knew they were users of narcotics and that both of them were known as "dope-heads." Their father's name is Lawrence. One of the women had been convicted of selling narcotics. The real estate agent in Oklahoma City corroborated the testimony of Ezzard that he came to the city that morning in response to a telephone call from him in connection with a real estate transaction, and the banker testified that he came to the bank on the same transaction. Several of Ezzard's neighbors

testified to his good reputation as a law-abiding citizen. The agent at the Santa Fé station who delivered the trunk to Ezzard testified that he asked him where it was going, and Ezzard said to Newcastle, which is the river crossing, and that he was hauling it for a Mrs. Smith. Ezzard denied that he told the agent that the trunk was for Mrs. Smith; he testified that he did not know her name and that she did not say the trunk was hers. He lived about twelve miles from the bridge.

[4-7] Presumptions or inferences of fact are not evidence, they are the result of evidence, and are raised on circumstances to supply the place of actual proof; when substantial proof is made contrary to the fact presumed, the presumption is rebutted. In civil cases they may sometimes fix the onus probandi, but not so in criminal on the main issue. There, on a plea of not guilty, the burden and quantum of proof to establish the corpus delicti and defendant's guilt never shifts. Lilienthal's Tobacco v. United States, 97 U. S. 237, 266, 267, 24 L. Ed. 901; Davis v. United States, 160 U. S. 469, 487, 40 L. Ed. 499. Where possession is the offense charged, the corpus delicti, and defendant's possession is shown, a verdict of guilty will stand in the absence of proof establishing an innocent possession. Feinberg v. U. S. (C. C. A.) 2 F.(2d) 955. But the writer is of opinion that a prima facie case is unknown in criminal procedure. In no condition of proof is it permissible to instruct a jury that it had become the duty of defendant to establish his innocence to obtain an acquittal. The principle is clearly expressed in Cunningham v. State, 56 Miss. 269, 21 Am. Rep. 360, approved in Davis v. U. S., supra, thus:

"The law clothes the accused with a presumption of innocence which he never loses until a verdict of conviction has been pronounced. He pleads nothing affirmatively, save in rare and exceptional instances, but by his plea of not guilty he puts upon the state the burden of establishing every fact necessary to constitute guilt. The changing phases of the evidence may make his case at various stages wear various aspects. At one moment it may seem that his guilt has been conclusively shown, and at the next it may appear to have been as conclusively negatived; but his own attitude never changes. To every fresh development and every new circumstance he repeats his plea of not guilty and in every new complication he rests upon his legal presumption of innocence. The testimony offered against him may indeed necessitate the production of something on his part to meet the case as made out; but it can never do this until, uncontradicted and unexplained, it has demonstrated his guilt beyond a reasonable doubt. Shall it be said that, because this has been accomplished at some particular stage of the testimony, the burden of proof has shifted, and thence forward the duty is imposed upon him of re-establishing his innocence beyond all reasonable doubt? *Nobody would venture so to assert, if the demonstration of guilt so made out was in regard to the commission of the act.* * * * The presumptions or implications which, in criminal cases, the law deduces from the establishment of particular facts, have no other force than to dispense with further proof of the thing presumed, unless something in the testimony, either theretofore or thereafter offered, suggests a doubt of the existence of the presumed fact. But the moment that doubt is engendered in reference to it, if it be as to a fact necessary to conviction, the state must establish the fact independently of the presumption; and the obligation to do this rests continuously upon her."

In a civil case, Fresh v. Gilson, 16 Pet. 327, 331 (10 L. Ed. 982), it is said:

"But presumptions can stand only whilst they are compatible with the conduct of those to whom it may be sought to apply them; and still more must give place, when in conflict with clear, distinct and convincing proof."

In Erhart v. Dietrich, 118 Mo. 418, 24 S. W. 188, the defense to an action on a note was that it was found in the hands of the maker after the payee's death, who was the father of the maker, and after it was due, which raised the presumption that it had been paid. The court said:

"In this case there is no pretense of a gift causa mortis, and the circumstances surrounding the acquisition of the possession, and the uncontradicted evidence of the father's mental weakness amply rebut the presumption of payment. To indulge such a presumption under these circumstances would establish a dangerous rule."

In State v. Jones, 64 Iowa, 349, 17 N. W. 911, there was conviction for murder. The defense was insanity, in support of which there was some evidence. The trial court had instructed the jury that if the evidence shows that the insanity of defendant was probable, that evidence would not overcome the presumption of sanity. On that subject the court said:

"The presumption is not to be weighed against any measurable amount of evidence."

Largen v. State, 76 Tex. 323, 13 S. W. 161, was a civil action. The court, in commenting upon a presumption relied upon by one of the parties, said:

"Presumptions cannot be indulged in opposition to facts which show that the fact sought to be established by presumption can have no existence."

[8] Surely, greater weight cannot be attributed to presumptions in a criminal case than is given them in a civil case. In Lilienthal's Tobacco Case, 97 U. S. 237, supra, it is said:

"Text-writers of the highest authority state that there is a distinction between civil and criminal cases in respect to the degree or quantum of evidence necessary to justify the jury in finding their verdict."

[9, 10] It may be conceded that the strength or weight of presumptions is for the jury, but it is obvious that the law attaches to them slight consideration in the face of credible testimony leading to a contrary conclusion. When that is the case, the issue should be decided on the testimony and not on the presumption, when the latter stands without support from other circumstances. We think it obvious that the proof, considering all of it, including the presumption, weighed heavily in favor of the defendant; and the only reason that we can find for the verdict of guilty is our belief that the district attorney improperly aroused the suspicions of the jury against the defendant. He asked the defendant on cross-examination incriminating questions, to all of which a negative answer was give, and thereafter no effort whatever was made to establish the affirmative of those questions. The first question was, whether the defendant was not taking the drugs to his cousin, Buck Stevens, whom the defendant knew to be a peddler of narcotics. The next question was, whether he was not taking the drugs to his cousin, Lloyd Skelly, who was also a peddler of narcotics. Both questions, in both of their aspects, were answered in the negative. The witness further said that he had not seen either of the parties referred to for several months, and seldom saw them.

[11] We cannot rid ourselves of the firm belief that the proof in the case is more consistent with innocence than it is with guilt, and this court has frequently held that evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction; and that where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction. Sullivan v. United States (C. C. A.) 283 F. 865. Furthermore, as we have seen, the proof, what there is of it, to sustain the charge that defendant was a wholesale dealer in the drugs, was circumstantial, and circumstantial proof to sustain a verdict of guilty must not only be consistent with the defendant's guilt but it must also exclude every reasonable hypothesis of his innocence. We therefore think the court erred in refusing to instruct a verdict of not guilty at the close of the testimony, to which refusal there was an exception, and which is assigned as error.

Reversed and remanded.

STONE, Circuit Judge (dissenting). Because I think the majority opinion is a departure from long-established principles and because I think those principles are of very great importance in the administration of criminal law, I feel compelled to dissent and to state the reasons which impel me to do so.

Ezzard was convicted of being a dealer in narcotics without registration as such or payment of the required tax. The sole question presented to this court is the sufficiency of the evidence to sustain the conviction. The majority opinion deems the evidence not sufficient and holds that the trial court should have instructed a verdict. The government showed and the defendant admitted possession of a trunk containing a very large amount of narcotics. The government relied upon the statutory provision that possession of such drugs should be "presumptive evidence" of guilt. The defendant sought to explain his possession as innocent. That explanation, if true, would have exonerated him. No witness was introduced by him who knew anything about the trunk of drugs or about the character of defendant's connection with it. Other witnesses testified concerning the good character of defendant and corroborated him on two material points, to wit, the purpose of his trip into town and his offer, at the time of arrest, to take the officers to the camp and find the woman who had requested him to get the trunk. While this testimony as to character and in corroboration was important, yet the utmost value it could have would be its support of the truth of the story told by defendant. In the end, his defense rested and was based upon his own evidence. He alone testified as to the circumstances surrounding and to the character of his possession of the trunk and drugs.

The peculiar province of a jury is to determine issues of fact from the evidence presented to it. The determination of issues of fact from evidence involves two matters: First, the truth of the evidence; second, the relative value to be accorded such evidence as is deemed true. The first is called credibility of the evidence; the second, weight of evidence. Each of these is for the exclusive determination of the jury unless there is an absence of reasonable difference of opinion concerning either. The rule is well stated and supported by numerous citations in 16 C. J. 932, § 2294, as follows:

"*Legal Sufficiency of Evidence to Go to Jury.*—Whether there is a legal sufficiency of evidence in support of the material issues of the case which will warrant its submission to the jury is a question of law for the court, in determining which it is only necessary that there should be so much proof as to make it proper to submit the evidence to the jury, and not that the court should be satisfied beyond a reasonable doubt. Where, however, there is any evidence, however slight, on which the jury may justifiably find the existence or the nonexistence of material facts in issue, and the evidence is conflicting, or of such a character that different conclusions as to such facts reasonably may be drawn therefrom, the issues should be submitted to the jury for determination, even though the court does not believe the evidence, or is of the opinion that it is not sufficient to convict, or is doubtful whether the evidence presented will be convincing to the jury. In such a case it is error for the court to take the issue from the jury by dismissal or nonsuit, or by the direction of a verdict, or by excluding the evidence from the jury. But where there is no evidence on an issue of fact, or where the evidence is legally insufficient to sustain a finding as to such fact, or where it creates only a suspicion or conjecture, or is undisputed and of such a character that only one inference reasonably can be drawn therefrom, the question becomes one for the determination of the court as a matter of law and should not be submitted to the jury; and the court should dispose of it without the intervention of a jury as by sustaining a demurrer to the evidence, by dismissal or nonsuit, or by directing a verdict."

Here a prima facie case of guilt, justifying submission to the jury, was made by admitted possession and the statutory requirement that such possession should be "presumptive evidence" of violation of the statute. Had there been no more evidence, the case must have gone to the jury upon that showing. The "presumptive evidence," placed in the case by the positive language of the statute, required the defendant to meet and overcome—to rebut—that presumption. Mugler v. Kansas, 123 U. S. 623, 674, 8 S. Ct. 273, 31 L. Ed. 205; Lilienthal's Tobacco v. United States, 97 U. S. 237, 268, 24 L. Ed. 901; Spurr v. United States, 87 F. 701, 706, 31 C. C. A. 202 (6th C. C. A.). Which, judge or jury, is to determine when sufficient evidence has been introduced to rebut this "presumptive evidence?" If that evidence is so conclusive both as to credibility and as to weight that there can be no reasonable doubt that the possession was innocent, then the court may so declare; but if it fails to reach this conclusive standard, either as to credibility or as to weight, the case should go to the jury. Here, the defendant has offered an explanation of innocent possession which is entirely sufficient to rebut the "presumptive evidence" of guilt, if his testimony be true. The trial court recognized this and abundantly protected defendant by charging that "if the defendant did not have knowledge of the contents of the trunk, or the jury has a reasonable doubt whether that was the case, then he is entitled to be acquitted." The difference between the position of the trial court and of the majority of this court is that the trial court left it to the jury to determine whether defendant was telling the truth while the majority here holds that the trial court should have accepted that testimony as true. The credibility of a witness depends upon many things. All of these are clearly before a trial court and jury but some of them can never be reflected from there into an appellate court. At the trial, the witnesses have to convince the eye as well as the ear. The appearance and demeanor on the stand are important helps in passing upon the credibility of a witness. Such helps are never available in an appellate court. But there are some considerations affecting credibility which are as appreciable in the appellate court as in the trial court. One of those is that the interest of the witness in the result of the litigation may affect or even destroy his credibility. Obviously, the above considerations are very applicable to a defendant facing an indictment for a felony. While I have the greatest respect for the views of the majority, I cannot escape the conclusion that the practical effect thereof here is to deny any force to these long-established and very effective means of testing credibility.

The statutory presumption is by no means a puny thing to be lightly brushed aside.

Resting upon its basic fact of possession shown, it warrants, though not compelling, conviction. It makes out a prima facie case. The practical purpose of the statute is to compel the accused—who alone knows all of the facts concerning his possession—to produce such explanatory evidence that the jury will have a reasonable doubt as to his guilt. If that result is, as matter of law, conclusively accomplished when any accused person presents a plausible story with no direct corroboration as to the character of possession but only as to some attendant circumstances, any practical value of the "presumptive evidence" becomes doubtful, if not negligible. Usually, the prosecution cannot know, in advance of the introduction of evidence by defendant, what explanation of possession will be made nor by what witnesses, nor how corroborated nor by whom. The chance to combat such testimony is ordinarily a minimum. Therefore, the more important to allow the trial judge and the jury to exercise their function of passing upon the credibility of the testimony. I think the above view is supported by Yee Hem v. United States (April 27, 1925) 45 S. Ct. 470, 69 L. Ed. —; Bram v. United States, 282 F. 271 (this court); Pierriero v. United States, 271 F. 912 (4th C. C. A.); Baender v. United States, 260 F. 832, 171 C. C. A. 558 (9th C. C. A.); and Gee Woe v. United States, 250 F. 428, 162 C. C. A. 498 (5th C. C. A.). Also, see Charley Toy v. United States, 266 F. 326, 329 (2d C. C. A.), and Dean v. United States, 266 F. 694 (9th C. C. A.).

A second ground for the majority opinion is that where all of the substantial evidence is as consistent with innocence as guilt it is the duty of the appellate court to reverse a judgment of conviction. With the rule of law thus announced, I have no quarrel but I can see no place for its application here. This entire matter must rest and rest alone upon the credibility of the accused. If his story is true there is no need for applying the above rule. If it is false there is no place for the rule because there is no evidence consistent with innocence. If credibility of the evidence has nothing to do with the applicability of the rule; if the rule is operative wherever the entire evidence—whether it be true or not—is consistent with innocence, then the statutory presumption has and can have no real force at all because any evidence of innocent possession must always be consistent with possession itself—in fact, it admits and is based upon the premise of possession.

I cannot escape the conclusion that the view of the majority is an invasion of the province of the trial court and of the jury in a field (credibility of witnesses) peculiarly belonging to them and where they are best qualified to reach correct conclusions, and that it emasculates the statutory requirement here involved to nothingness.