The Court took time to consider, and at November term, 1806,
Cranch, C. J.,
delivered the opinion of the Court. The questions, arising in this case, are, 1. Can the Court issue an attachment of contempt, in any case, against a witness in a civil cause, for not attending according to summons ? 2. If so, upon what evidence of contempt will the Court issue it ? 3. Can the Court issue an attachment against a witness in a civil cause, who resides out of the district, but within one hundred miles from the place of trial ? 4. If so, to what officer shall it be directed ?
1st. There seems to be no reason to doubt the power of the Court to grant an attachment of contempt against a witness for not attending according to summons. The disobedience of any lawful command of. a court of record is, at common law, a contempt of the authority of the court; and for all such contempts the common law process is an attachment.[1] The common law being part of the law of Virginia, became part of the laws declared by the Act of Congress of the 27th of February, 1801, *333 [2 Stat. at Large, 103,] to be in force in this country. Hence, whatever powers are, by the common law, incident to a court of record, may be exercised by this Court, unless restrained by statute ; but so far from being restrained by statute, the power of punishing contempts, and particularly that of a witness refusing to attend according to summons, is recognized by the statutes of Virginia and of the United States. By the Judiciary Act of 1789, [1 Stat. at Large, 73,] it is enacted, that “ all the courts of the United States shall have power to punish, by fine and imprisonment, at the discretion of the said courts, all contempts of authority, in any cause or hearing before the same ; ” and in the 14th section of the same act, (p. 81,) the power is given to issue all writs “ necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law.” An attachment is a writ agreeable to the principles and usages of law, and is necessary for the exercise of their jurisdiction as to con-tempts. It is also necessary in another point of view. The court cannot exercise its jurisdiction in common cases unless the testimony of witnesses can be had either by deposition or viva voce. If the witness in any cause is within one hundred miles of the place of trial, he cannot be compelled to give his deposition ; and his deposition, if taken, cannot be used; and if his personal attendance cannot be had, the court cannot exercise its jurisdiction in that cause, and his personal attendance cannot be had but by an attachment. An attachment, therefore, is a writ necessary for the exercise of the jurisdiction of.the court in the trial of causes, as rvell as in the punishment of contempts. By the Act of Congress of the 13th of February, 1801, [2 Stat. at Large, 89,] which was' in force on the 27th of February, 1801, one judge of the Circuit Court was authorized to hold a court for certain purposes, and to direct subpoenas for witnesses to attend the same, and the requisite process on the non-attendance of witnesses and jurors, and to award and issue process, and order commitment for contempts. And by the Act of February 27,1801, this Court and its judges have the same powers which were given to the circuit courts by the Act of February 13th, 1801.
But it has been said, in argument, that the Act of Virginia of November 29, 1792, § 4, (p. 278,) having imposed a penalty of 16 dollars upon a witness failing to attend, and having given the party injured a right to sue the witness for damages, .contains an implied prohibition of any other remedy or process to compel his attendance. But the 7th section of the same act recognizes a compulsory process different from a subpoena. The words are, “ any subpoena or process to require or compel the attendance of any witness, may be served or executed in the district, county, or *334 corporation, 'where the said witness shall be found.” This clause, as we understand it, ought to be construed reddendo singula sin-gulis, so as to read thus : “ A.ny subpoena to require, or process to compel, the attendance of any witness, may be served or executed (that is, the subpoena to require may be served, or the process to compel may be executed,) in the district, &c., where the witness may be found. Here, then, is a direct recognition, by the law of Virginia, of a “ process ” “ to compel ” the attendance of a witness, and which is to be “ executed ” on the witness wherever he may be found. The Act of Virginia, section 4, is evidently intended to be a copy, substantially, of the 12th section of the Stat. of 5 Eliz. c. 9, which, in England, has never been construed so as to deprive the courts of the power of proceeding against a witness by attachment.
Taking it, therefore, as established, that this Court has power to issue an attachment of contempt against a witness for disobedience to a summons, it is to be considered, 2d. Upon what evidence of contempt will the Court issue it ? It is laid down by Bacon, (1 Ab. 180,) that it may be awarded upon a bare suggestion ; d fortiori, therefore, it may be issued upon the return of a sworn officer, who certifies that he has summoned the witness; and upon the record of the court, which certifies that, being called, the witness failed to attend according to the summqns. And this is the usual practice of the courts in Maryland. What the practice has been in Virginia we are not informed. In New York it is not usual to grant an attachment in the first instance, Jackson v. Mason, 2 N. Y. T. R. 92; and in England, it seems that the court has usually required an affidavit, and seldom grants an attachment without a previous rule to show cause. But in England the motion for an attachment is not made at nisi prius, but in the Court at Westminster Hall; and the object is not to obtain the attendance of the witness, but to punish him for his contempt. In this country it is used as the means of compelling an actual attendance on the trial, so as to "prevent a continuance of the cause to a subsequent term. If the witness, when brought in, clears the contempt on oath, he is discharged without fine. The return of the officer and the non-attendance of the witness, are certainly prima facie evidence of a contempt of the process of tfie court; and the remedy by attachment is found to be productive of very little inconvenience, and that is far overbalanced by the promptness of the remedy. The affidavit of a party could be very little more satisfactory to the Court than the return of the subpoena. We are therefore of opinion, that the practice heretofore adopted by the Court is proper.
But the great question is, 3dly, can the Court issue an attach *335 ment, in a civil cause, against a witness who resides out of the district, but within one hundred miles of the place of trial ? The constitution of the United States (eighth amendment) declares, that in criminal prosecutions, the accused shall have compulsory process for his witnesses. What is compulsory process ? Not a summons alone. No other compulsory process for witnesses is, or has been known, by the laws of England, or of this country, than an attachment of contempt. It is true, in criminal prosecutions, the government bind their witnesses over by recognizance ; and, if they do not attend, their recognizances are forfeited ; but this is not compulsory process ; a man may choose to forfeit his recognizance rather than attend. On criminal prosecution, therefore, we take it for granted that the accused would have a right to attachment for his witnesses; and as, in such cases, depositions cannot be used, the attachment must, of course, run through the United States, because the constitution has guaranteed to him this right.
By the Act of Congress of March 2d, 1793, [1 Stat. at Large, 333,] subpmnas in criminal cases, may run from one district into any other; and in civil cases also to the extent of one hundred miles from the place of trial. Why should Congress give the power to send subpoenas without giving the power of enforcing them ? It would be a mere waste of time, and a means of bringing the authority of the Court into contempt. Congress seems to have taken it for granted that it was sufficient to give the Court the right to require the attendance of the witness, and that the usual and necessary power of all courts to compel obedience to their lawful orders, by attachment, was'sufficient to enforce the subpoena. So far as a court has jurisdiction lawfully to command, it seems to follow that it has jurisdiction to cause its command to be respected. As it regards the attendance of witnesses in criminal cases, each court of the United States has jurisdiction over the whole United States; and, in civil cases, to the extent of one hundred miles. That such was the understanding of the legislature is evident from the provisions of the Acts of Congress. The Judiciary Act of 1789, [1 Stat. at Large, 73,] authorizes the taking of the deposition of a witness who lives more than one hundred miles from the place of trial, “ or who is about to go out of' the district, and to a greater distance than as aforesaid.” Why take his deposition if he lives more than one hundred miles from the place of trial ? Because you cannot compel his attendance. Why not take his deposition if he is within one hundred miles ? Because you may compel his' attendance at the trial. Why not take his deposition if he is about to go out of the district, but not one hundred miles from the place of trial ? Because you may *336 compel his attendance. Why permit his deposition to be read if he has gone out of the United States, but not one hundred miles from the place of trial ? Because you cannot compel his attendance. The same act declares that “ any person may be compelled to .appear and depose as aforesaid; ” (that is, any person who lives more than one,hundred miles from the place of trial; or is about to go out of the district and more than one hundred miles from the place of trial, may be compelled to appear and depose.) How compelled ? “ In the same manner,” says the act, “ as to appear and testify in court; ” that is, as the same persons might be compelled to appear and testify in court, if they were within one hundred miles of the place of trial, although they should be out of the district; for you cannot take the deposition of a witness who is about to go out of the district, unless he is about to go more than one hundred miles from the place of trial; and if you do take his deposition, you cannot use it, says the same act, unless it shall appear to the satisfaction of the court that the witness is dead, or gone out of (not the district, but) the United States, or to a greater distance than as aforesaid from the place where the court is sitting. If this Act of Congress neither authorizes the court to compel the attendance of a witness who is out of the district., but within one hundred miles of the place of trial, nor allows his deposition to be read in evidence, the testimony of such witness may be entirely lost. But by not allowing his deposition to be redd it is evident that Congress intended to give the court power to compel his attendance. It has been said, in argument, that the power to issue a summons does not imply the power to send an attachment.
The expressions of the Act of Congress are that “ subpoenas may run into any other district,” &c. The words “may run” will perhaps bear a more comprehensive meaning than words containing a simple power to issue a summons to another district. But in either case, we think the authority to command the attendance of a witness necessarily implies a power to enforce that command. The means of enforcing it is an attachment, which is a common law weapon given to every court of record, and without which it would soon sink into disgrace and contempt. As far as the authority of the Court extends, so far is that authority to be protected by the punishment of its contempt. It has been said that the contempt is an offence committed in another district, and therefore cannot be punished in this. But although committed out of the district, it was still within the jurisdiction of the Court quoad hoc. As to the commanding and compelling the attendance of witnesses, the jurisdiction of the Court extends to the distance of one hundred miles from the place of trial. It has been con *337 tended, also, that the court has no power to send criminal process out of the district; and in support of this proposition the first Judiciary Act of the United States, [1 Stat. at Large, 73,] has been cited ; which provides that, if an offender be found in a district,' other than that in which he is to be tried, he can only be arrested by a warrant issued by some authority*wilhin the district where he is found ; and that the judge of that district shall issue, and the marshal shall execute, a warrant for the removal of the offender to the district where the trial is to be had.
This objection may receive the same answer as the last,— namely, that in the one case the court has jurisdiction, and in the other it has not. In the case of a criminal, this Court is not authorized by law to command the offender, in another district, to attend the court in this. No jurisdiction, quoad hoc, is given.
It has also been objected that no officer is bound to execute it, because the marshal of the District of Virginia is only bound to execute process within his district; and the marshal of the District of Columbia, within his district only ; so that neither marshal has power fully to execute it. The answer to this objection is, that if the court has the power of compelling the attendance of the witness, its process is lawful. The Act of Congress, it is true, is peremptory that he shall execute throughout his district, &c., but it does not forbid him to finish an execution out of it; and his oath binds him to execute and return all lawful precepts to him directed, whether in or out of his district. For these reasons we have no doubt that this Court has the power of compelling, by attachment, the attendance of witnesses who live within one hundred miles of the place of trial, although out of the District of Columbia.
The next question is — 4th. To what officer shall the attachment be directed ? Undoubtedly to the marshal of the district in which the witness lives. It is declared by the Judiciary Act of 1789, <§> 27, [1 Stat. at Large,73,] to be his duty “ to execute throughout the district, all lawful precepts directed to him, and issued under the authority of the United States,” and he is bound by his oath not only to execute all lawful precepts directed to him, but also to make true returns; and that, without any restriction as to the district from which such precepts are to issue, or to which they are to be returned. If, then, it is lawful for this Court to issue subpoena, commanding the marshal of the District of Virginia to summon a witness who lives in that district to attend the court in this, it is a lawful precept to him directed, under the authority of the United States, and he is bound to execute and return it. So if this Court has the power of compelling the attendance of such witness by attachment, the writ of attachment is equally a lawful *338 precept to him directed, under the authority of the United Slates, and he is equally bound to execute and return it. The whole question is finally resolved into that of the power of the court to compel the attendance of the witness; for if the court has that power the process is lawful; and if lawful, the marshal is bound to execute and return it. ,
Upon the whole, therefore, we are satisfied that this Court has the power to send an attachment into the District of Virginia, for the purpose of compelling the attendance of a witness, provided it appears by affidavit that the witness lives within one hundred miles of the place of trial; and we think the return of the marshal upon the subpoena, and the record of the default of the witness, and the affidavit as to residence, sufficient prima facie evidence of a contempt, upon which to issue the attachment. See also the case of Wellford v. Miller, in Alexandria, July term, 1808, [post.]
Note. Attachment for contempt. 1 Bac. Ab. 180. It issues at the discretion of the judges of a court of record against a person for some contempt, for which he is to be committed; and maybe awarded by them upon a bare suggestion, or on their own knowledge, without any appeal, indictment, or information ; and this summary method of proceeding is certainly now established as part of the law of the land. See, also, 4 Bl. Com. 284; Hammond v. Stewart, 1 Str. 510; Wyat v. Wingford, 2 Ld. Raym. 1528; Chapman v. Pointon, 2 Str. 1150; Bowles v. Johnson, 1 W. Bl. 36 ; Pearson v. Iles, Doug. 560 ; Rex v. Plunket, 3 Burr. 1329; Rex v. Ring, 8 T. R. 585; Tidd’s Pr. K. B. 256 ; Respub. v. Oswald, 1 Dal. 323; Jackson v. Mann, 2 N. Y. T. R. 92; Stretch v. Wheeler, Barnes, 497.

 See the authorities cited in the note at the end of this case.