WILLIAM H. FRESH, PLAINTIFF IN ERROR, *v.* RIAH GILSON, CHRISTOPHER MIDLAR, AND JAMES FRESH, DEFENDANTS IN ERROR.

Liability for the acts of others may be created either by a direct authority given for their performance, or it may flow from their adoption, in some instances from acquiescence in those acts. But presumptions can stand only whilst they are compatible with the conduct of those to whom it may be sought to apply them; and must still more give place when in conflict with clear, distinct, and convincing proof.

The Circuit Court of the District of Columbia admitted as evidence a statement by one witness of what had been testified by another on the trial of a cause, to which the plaintiff in the cause and against whom the evidence was to operate, was not a party. Held that this was error. Wherever the rights of a party, founded upon a deed, are dependent on the terms and conditions of that deed, the instrument thus creating and defining those rights must be resorted to; and must regulate, moreover, the modes by which they are to be enforced at law. These identical rights cannot be claimed as being derived from a different and inferior source. If the deed be in force, all who claim by its provisions must resort to it.

When the contract contained in a deed has been varied or substituted by the subsequent acts or agreements of the parties, thereby giving rise to new relations between them, the remedies, originally arising out of the deed, may be varied in conformity with them. An action upon the deed would not be insisted upon, or permitted, because the rights and obligations of the parties to the suit would depend on a state of things by which the deed had been put aside.

IN error to the Circuit Court of the United States, for Washington county, in the District of Columbia.

This case was argued by Mr. Brent, junior, for the plaintiff in error; and by Mr. Bradley, for the defendants.

Mr. Justice DANIEL delivered the opinion of the Court.

This case arises under the attachment law of the state of Maryland, passed in 1795; and comes before this Court upon a writ of error to the Circuit Court of the District of Columbia, for Washington county; within which the law of Maryland above mentioned is in force. The proceedings instituted in this case, although commencing by an attachment, and upon what is termed a short note in lieu of a formal declaration, assume, nevertheless, the essential character, and in some respects the usual forms of the action of assumpsit, and must be governed by the

rules applicable to such an action. The defendants dissolved the attachment by appearing and entering special bail, and pleading "non-assumpsit;" and upon the issue made up on this plea, the cause was tried in the Circuit Court.

Upon the trial, exceptions were taken in five separate instances to the rulings of the Circuit Court, and in each of them the exception sealed by the judges is made a part of the record. To test the accuracy both of the decisions thus pronounced, and of the objections alleged against them, it will be necessary to advert to the facts adduced in proof.

It appears that on the 23d of August, 1832, the defendants in error entered into a covenant with the Chesapeake and Ohio Canal Company, for certain rates and prices stipulated in a covenant sealed between the defendant and the company by their president, and in a specification appended to the said covenant, to construct in a substantial and workmanlike manner, culvert No. 116, on the 150th section of the Chesapeake and Ohio Canal; and to prosecute the work upon the said culvert without intermission, with such force as should in the opinion of the resident engineer secure its completion by the first day of August, 1833.

On the third day of November, 1832, a covenant was entered into between the plaintiff in error and the defendants, or rather with Riah Gilson, one of the defendants, styling himself superintendent for Gilson and Company, by which the construction of the culvert No. 116 was let to the plaintiff, at the contract prices to be paid by the company for the work; with the exception that Fresh should pay to the defendants, from whom he took this contract, the sum of one hundred dollars, which sum appears to have been a profit reserved to themselves by the first contractors upon the transfer of their undertaking. In this second covenant, the plaintiff in error bound himself " to be urgent in the performance of the work, so that it might progress in accordance with the specification and directions of the engineers." And further, that in the event of neglect or failure on his part, the defendants should have authority to declare the work abandoned, to assume the direction, and to complete it at the plaintiff's expense. Having thus obtained a contract under the defendants, the plaintiff, on the second day of May, 1833, made an agreement with Elijah Barret for building of this culvert, by the latter;

[Fresh *v.* Gilson et al.]

stipulating to pay Barret the price of one dollar twelve and a half cents for every perch of stone work of twenty-five cubic feet, upon a certificate and approval of the engineer or superintendent of masonry as to the fidelity of the work. The plaintiff on the trial offered these several contracts in evidence; also an account against the defendant stated, on the 24th of December, 1833, for masonry, excavation, and paving performed, and for cement not supplied by the plaintiff in the construction of culvert 116; on which account, after allowing a credit of one thousand one hundred and forty-two dollars and seventy-three cents, a balance of one thousand three hundred and forty-three dollars and one cent was claimed. This was the account on which the warrant of attachment issued. The plaintiff further proved the delivery of the letter dated December 25th, 1833, addressed by him to Wells the agent of the defendant, in which he required a statement of his account with them, and expressly forbade the payment to Elijah Barret of any amount whatever.

The defendants, to rebut the plaintiff's demand, offered the account, exhibit (C), commencing December 5th, 1832, and terminating the 21st of December, 1833, amounting to the sum of one thousand three hundred and sixty-nine dollars and thirty-six cents; and proved by their clerk that the work on the said culvert was completed on the 21st of December, 1833, and that the account last mentioned was received by the plaintiff without objection except as to the quantity of cement charged therein. The defendants likewise offered in evidence several orders, numbered from 1 to 7, drawn by Elijah Barret, by himself and his agents, in favour of William Harris, upon the defendants, at different periods during the autumn and winter of 1833, and claimed the benefit of them as payments to the plaintiff. These orders purport to have been paid all on the same day, viz., April 29th, 1835, rather more than two years posterior to the date of the letter delivered to the defendant's agent, positively forbidding any payment to be made to Barret or to his order, and nearly one month after the institution of this suit. And it is admitted that the orders were never shown to the plaintiff, nor expressly recognised by him at any time. The defendant offered seven other papers purporting to be orders and due-bills signed and certified by Elisha Barret, in November and December, 1833; three of them

2 E 2                    42

said to be for work done upon culvert No. 116, and amounting in the whole to two hundred and seventy-three dollars and fifty cents; these last orders and certificates, it is also admitted, were never shown to the plaintiff, nor acknowledged by him, and it does not appear that they have ever been paid. Oral testimony was also introduced on the part of the defendants, in order to show that the work had been abandoned by the plaintiff, and its completion assumed and accomplished by the defendants; and on the part of the plaintiff, like evidence was offered to prove that he continued on the work and laboured on it until it was finished on the 21st of December, 1833.

Upon the foregoing state of facts, the counsel for the plaintiff moved the Court to exclude from the jury the orders drawn by Barret in favour of Harris, as well as the evidence offered to prove the payment of those orders in April, 1835, more than two years after their payment had been forbidden by the plaintiff: the Court admitted this evidence to go to the jury, and this produces the question presented by the first bill of exceptions.

We are unable to perceive upon what correct legal principle this question was ruled as it has been by the Circuit Court. There is no express power apparent in the record, nor indeed was any attempted to be shown in the proofs, existing in Barret to bind Fresh for any amount with any person. It is true, that under the contract between them, the former would have had a claim on his own behalf, whenever he should have fulfilled his undertaking; but not even then until he should have procured a certificate from the engineer of the company. But the right or claim he would then have acquired, differs essentially from the pretension sanctioned by the decision of the Court, which amounts to an evasion of the stipulated test of his own conduct and his own rights, and to a claim by that very evasion to bind his employer ad libitum to any amount and to any person. Nor is it perceived that the admission of these orders was warranted by any presumption arising from the fact that orders previously drawn by the same person were comprised in the account proved to have been presented by Fresh; and not objected to by him, except as to the quantity of cement charged therein. Liability for the acts of others may be created either by a direct authority given for their performance, or it may flow from their adoption. or, in some instances, from

[Fresh *v.* Gilson et al.]

acquiescence in those acts. But presumptions can stand only whilst they are compatible with the conduct of those to whom it may be sought to apply them; and still more must give place when in conflict with clear, distinct, and convincing proof. 3 Bac. Abr. 318, (H) Presumptive proof; 4 Starkie's Evidence, 53. The letter of the plaintiff Fresh, delivered to the agent of the defendants more than two years anterior to the alleged payment of the orders drawn by Barret, fully accords with the character of the proof just described; it justified no presumption of right or authority in Barret to make, nor of any obligation upon the defendants to pay those drafts; and the Circuit Court therefore erred in permitting them to be given as evidence, instead of excluding them wholly from the jury.

The next question arises upon the admissibility of the second series of orders and certificates or due-bills signed by Barret, amounting together to three hundred and seventy-two dollars and fifty cents, embraced in the second bill of exceptions. These orders are obnoxious to even stronger objections than those existing against the former orders drawn by Barret; they not only, like the former, were never (as is admitted) shown to or acknowledged by the plaintiff, but they carry on their face no receipt nor other semblance of payment, nor is proof attempted aliunde, that the defendants have given, or are bound to give, any consideration for them. The Circuit Court should have excluded these papers also.

It is next stated that in addition to the evidence previously introduced by the defendants, they offered to prove by a competent witness, that at the trial of a cause brought by one Hammond against two of the defendants, and to which the plaintiff was not a party, certain facts were proved by a witness examined in that cause. The plaintiff asked the exclusion of this testimony by the Court, but his motion was denied, and this denial presents the point upon the third bill of exceptions. The evidence let in by this decision of the Circuit Court was not the exhibition of a record, nor even of a judgment, nor of process; but simply a statement by one witness of what had been testified by another, on the trial of a cause to which the plaintiff was not a party, without an attempt to account for the absence of the person whose testimony was thus given at second hand. The principles,

that the best evidence the nature of the case admits of must always be produced, and that a person shall not be affected by that which is res inter alios acta, are too familiar to require authorities to support them. We will mention, however, as applicable to these points, 3 Bac. Abr. 322 (I); 3 East, 192; 2 Wash. 287; 5 Cranch, 14; 1 Starkie's Ev. 58, 59. But familiar as these principles may be as rudiments of the law, they are elements which enter essentially into the security of life, character, and property. The Circuit Court in conflicting with these principles have further erred.

In the fourth bill of exceptions it is stated, that defendants offered to prove that Riah Gilson and Christopher Midlar, two of the defendants, superintended the performance of the work on the culvert No. 116, and that their superintendence was worth one hundred and fifty dollars. That to the admissibility of this proof, the plaintiff objected; but the Court permitted it to be received. The questions here raised, or rather the facts which make the basis of those questions, are somewhat vaguely and imperfectly stated. Enough however can be gathered from them to justify the following conclusions. 1st, That by the written contract between the plaintiff and the defendant, or by any oral agreement attempted to be shown between these parties, there is no condition established authorizing or requiring the defendants to become the supervisors of the plaintiff in the performance of his work. 2d, That if the defendants have performed the work either in fulfilment of their original contract with the Canal Company, or in consequence of an abandonment by the plaintiff, a charge for superintendence would appear inconsistent with the position they would have occupied in either view. Such a claim is therefore regarded as irregular and unauthorized, and should have been excluded.

Upon the fifth and final bill of exceptions, it is in substance set forth, that the plaintiff having given in evidence the contract between the Canal Company and the defendants, and the contract under the seals of the plaintiff and Riah Gilson, one of the defendants; the latter offered their account against the plaintiff, and proof that the culvert No. 116, was not completed until after the 1st of August, 1833, the period designated in the original contract with the company. The plaintiff then offered evidence to

[*Fresh v. Gilson et al.*]

show that the work was carried on until the 21st of December, 1833, at which date it was completed, and afterwards accepted formally and expressly by the company. And the defendants offered oral evidence to prove that the work had been abandoned by the plaintiffs, and was finished by the defendants. Then follow the instructions moved for and granted, in the following terms. The defendant then prayed the Court to instruct the jury that " If from the evidence the jury shall find, that there was an agreement under seal between the said plaintiff and the defendant, for the execution of the work and labour for which this action was brought, the plaintiff is not entitled to recover in this action;" and further, that " If from the evidence the jury shall find, that the said plaintiff performed the work and labour for which this action is brought under a sealed agreement between the said plaintiff and Riah Gilson, then the plaintiff is not entitled to recover in this action;" to the granting of which two "instructions unless qualified, the plaintiff objected; but the Court overruled the objection, and gave the said instructions as prayed."

Had the ruling of the Circuit Court in this instance been limited to an affirmance of the second proposition insisted on by the defendants, this Court could not hesitate in sustaining the decision: for we hold it as invariably true, that wherever the rights of a party founded upon a deed are dependent upon the terms and conditions of that deed, the instrument thus creating and defining those rights must be resorted to, and must regulate, moreover, the modes by which they are to be enforced at law. These identical rights cannot be claimed as being derived from a different and an inferior source. If the deed be in force, all who claim by its provisions must resort to it. This is regarded as a canon of the law, and numerous authorities might be adduced to sustain it, both from compilations and from the adjudged cases. 2 Bac. Abr. title Debt, letter (G), citing 13 H. 4, 1, and Roll. Abr. 604; 1 Chitty's Pleading, 75; 4 Bos. & Pull. 104; Atty v. Parish, 12 East, 585; Clark v. Smith, 14 Johns. 316; Munroe v. Perkins, 9 Pick. 298.

These authorities, to which many more might be added, are full and express to the point that where a deed is the foundation of the claim, and can still be regarded as subsisting and in full force between the parties, the action to enforce its provisions must

be upon the instrument itself. In the case of Tilson v. The Warwick Gaslight-Company, 4 Barn. & Cres. 962; there are some expressions of Bayley, Justice, which indicate an opinion by that learned judge, in opposition to the doctrine above laid down, and as counsel in the case of Atty v. Parish, he had maintained an opposite doctrine : but it should be borne in mind, that in Tilson v. The Gaslight Company, the decision did not turn upon the principle ruled in the several authorities above cited, but entirely upon a state of the pleadings in which the judges declared they would be justified, if necessary, in presuming the existence of a deed. It should be remembered too, that in deciding the case of Atty v. Parish, Chief Judge Mansfield, after advisement, and delivering the unanimous opinion of the Court, declared the doctrine contended for by Justice (then Serjeant) Bayley, to be such as he did not understand, or did not feel the application of. With all the deference justly due to so learned and able a jurist as Justice Bayley, his argument as counsel, or his opinion intimated not upon the point adjudged, should not overrule a current of authorities extending from the Year Books to our own day.

There cannot be a doubt that where the contract contained in a deed has been varied or substituted by the subsequent acts or agreements of the parties, thereby giving rise to new relations between them, the remedies originally arising out of the deed, may be varied in conformity with them. An action upon the deed would not be insisted upon or permitted, because the rights and obligations of the parties to the suit would depend upon a state of things by which the deed had been put aside. Hence it has been ruled, that where a person who had covenanted to perform certain work had failed or refused to fulfil his covenant, but had afterwards, upon the parol engagement of the covenantee, or by his acts amounting in law to an engagement, gone on in whole or in part to do the work, he might recover the value of the work in assumpsit, upon a quantum meruit. So too, between partners, though articles of copartnership have been sealed between them, yet, upon an account stated, and a balance struck, assumpsit will lie. This principle is illustrated in several of the authorities already quoted, and in none of them more forcibly than in those of White v. Parkin, 12 East, 585; Monroe v. Perkins, 9 Pick. 289; to which may be added the cases of The Marine Insurance

[Fresh *v.* Gilson et al.]

Company *v.* Young, 1 Cranch, 331; Baird *v.* Blagrove, 1 Wash. 170; and Latimore and others *v.* Harsen, 14 Johns. 330; and in the case of Fletcher *v.* Gillespie, 3 Bing. 635, although a charter-party had been entered into, yet expenses incurred by the captain in loading the ship were recovered in assumpsit; for, say the Court in that case, "This claim does not rest upon the charterparty, it is for money paid dehors the contract, for the ease and benefit of the defendants, and from which they have derived advantage." Numerous cases applicable to the point here considered will be found collected by Saunders, in his Treatise on Pleading and Evidence, vol. i. p. 110. It is upon this well-settled distinction, that this Court, whilst it recognises the principle affirmed by the second instruction contained in the fifth bill of exceptions, feel bound to disapprove and overrule the first instruction in that bill. It is manifest that at the trial testimony was introduced tending to show that the contract between the defendants and the Canal Company, as well as that entered into between the same defendants and the plaintiff, had been modified or substituted by other and new contracts, tending too to show acts of performance by the parties to these new or modified engagements. It was certainly competent for the parties to use such evidence, and to rely upon its effect before the jury. The first instruction of the Circuit Court, contained in the last bill of exception, cuts off from the plaintiff at least all benefit of such evidence, however strong it might have been. In this we consider that instruction as having deprived the plaintiff of an undoubted legal right. We regard it therefore as erroneous; and for this cause, and for the reasons assigned for disapproving the rulings of the Circuit Court upon the other instructions given in this case, the judgment of that Court is hereby reversed, and the cause is remanded to be again tried by a jury in conformity with the principles of this decision.