## UNITED STATES v. BOLLMAN.

No. 9940.

Circuit Court of Appeals, Eighth Circuit.

Sept. 25, 1934.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (Robert W. Colflesh, U. S. Atty., of Des Moines, Iowa, Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen., on the brief), for the United States.

Howard L. Bump, of Des Moines, Iowa (Johnston & Shinn, of Knoxville, Iowa, on the brief), for appellee.

Before STONE, Circuit Judge, and JOYCE and BELL, District Judges.

STONE, Circuit Judge.

This is an appeal by the United States from a judgment according payment of installments on a war risk insurance policy.

Appellee was beneficiary of a war risk insurance policy upon the life of her husband, who was killed in action, in October, 1918. Monthly payments of $57.50 were made her under the policy, from January 1, 1919, to September 1, 1923. Upon the latter date the payments were suspended on the ground that appellee had forfeited all right thereto under section 22 of the Act of October 6, 1917 (40 Stat. 401), which provides: "The open and notorious illicit cohabitation of a widow who is a claimant shall operate to terminate her right to compensation or insurance from the commencement of such cohabitation."

After this termination of payments, appellee submitted proof to the bureau which led to the withdrawal of its order of suspension. She was then paid the back installments and the regular monthly installments until October, 1925, at which time there was a second suspension upon the same grounds, and since that time the payments have been made to the father and mother, as next beneficiaries of the deceased soldier.

This suit was filed by appellee, December 12, 1932. The parents of the soldier intervened in opposition to the petition. The government answered, setting up forfeiture on the above grounds, and also lack of jurisdiction based upon the pleading that the action was barred by the statute of limitations. Jury was waived, and the court made findings of fact and stated conclusions of law, according recovery of installments for six years prior to filing of this suit. The United States has appealed. Appellant presents here three matters which are that the evidence established the grounds of forfeiture; that the applicable statute of limitations barred the suit; and that certain evidence was improperly excluded.

I. Sufficiency of Evidence.

While there was direct conflict in the evidence as to any improper cohabitation, yet there was substantial evidence upon which the court found that "on occasions she has had illicit relations with men other than her husband." However, the court found further: "That any illicit relations that the plaintiff, Eva Baty Bollman, may have had were not open and notorious, and the Court therefore finds that at no time after the death of her husband while she was drawing compensation was she guilty of open and notorious illicit cohabitation." Another finding of the court is that appellee "has established in this court by a fair preponderance of the evidence that at no time prior to such discontinuance or thereafter was she guilty of open and notorious illicit cohabitation."

The evidence permitted to be introduced abundantly sustains the above findings of the court. There is evidence (denied by appellee) of two witnesses who testified they had had repeated illicit intercourse with appellee; but their testimony was as to happenings which were hidden and secret, and there is no testimony in the case of "open and notorious" illicit cohabitation.

For its own reasons, Congress did not see fit to base forfeiture on the bare fact of illicit intercourse alone, but expressly required that such intercourse be "open and notorious." This latter requirement is as much a necessary element of the forfeiture as the intercourse itself. Thus, under the statute, two things were required to be proven; one of these is the fact of illicit intercourse, the other is the fact that such intercourse was open and notorious. The government contends that these requirements may be met by proof of repeated or continuous acts of illicit intercourse. That does not meet the requirement of the statute. For this failure in necessary proof the amply supported findings of the trial court as to this matter should be sustained.

Appellant relies upon King v. United States, 17 F.(2d) 61 (C. C. A. 4), and Barksdale v. United States, 4 F.Supp. 207 (D. C. W. D. S. C.). In the Barksdale Case, the District Court for the Western District of South Carolina somewhat reluctantly followed the King Case as being controlling authority in the Fourth Circuit. The King Case recognized that the illicit intercourse must be "open and notorious," and that such "open and notorious" character must be evidenced other than by mere intercourse. The holding was simply that evidence of the birth of illegitimate children is evidence of such "open and notorious" intercourse within the statute.

II. Statute of Limitations.

The government insists that the portion of 38 USCA § 445, providing that "No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date," is applicable to this case. It would seem that this provision applies directly and solely to "yearly renewable term insurance," and the evidence conclusively shows that this insurance had not been changed into renewable insurance. Therefore, it may be

seriously doubted whether the above-quoted provision is applicable. It may be that this insurance is governed by section 41, subd. 20, title 28 USCA, which is the general limitations statute as to claims against the United States. However, it is not material in the result of this case which of these statutes governs, as each provides that actions shall be barred after six years from the time the right of action accrued. Therefore, the really substantial controversy here is concerning the time of accrual of this action. The appellant contends that the right of action accrued when the bureau finally determined that it would not continue further payments upon this policy and thereby a "disagreement" was reached between the bureau and appellee. The court found that date to be March 1, 1926. Appellee contended and the court found that a cause of action accrued at the time each payment became due under the law and applying the six-year limitation permitted recovery only for the installments within six years of the time of bringing this suit.

We think it unnecessary to determine the issue as to whether the bar of the statute applies to all future payments or arises with and controls each payment as it becomes due. This is so because we think the trial court and appellant here are wrong as to the date when this rejection became final and that final rejection was less than six years before this action was filed. It is true that on March 4, 1926, the bureau informed appellee that it had been determined she had violated the above section 22, and that her payments would be stopped. However, the record shows further communications establishing that there were continued negotiations between claimant and the government with a view to having this action set aside, and that such negotiations were permitted by the bureau and, in a sense, participated in by it. Those communications clearly show that this effort to reopen the matter was not finally closed by the bureau until December 1, 1931. We hold that so long as this order was under serious discussion in the bureau and until it finally declined to reopen the matter the order should not be deemed final for application of limitations against suit. Obviously, it is to the interest of all parties that suits of this character be avoided. While the claimant may treat the action of the government in its order of disagreement as final, yet it may continue to discuss and contest the matter before the bureau. So long as the bureau treats or acts in a manner which would lead the claimant reasonably to believe that it is holding the matter open, we think it would be unjust to regard it as closed by the first order. The bureau can at any time definitely terminate such proceedings by stating that it declines to reopen and that its order is final. Here the correspondence shows that on July 15, 1931 (within the 6-year period after the order of March 4, 1926, and less than two years before this action was filed), attorneys for appellee were advised: "Appropriate action is now being taken in this matter and you will be further advised as soon as new facts develop. All future communications relative to this case should bear the veteran's name and refer to the number XC–105,530." On September 9, 1931, a further communication stated that a careful review had been made of the evidence in the case and the evidence had developed grounds for forfeiture, and "consequently the previous finding of this office must stand." Thereafter, on October 12, 1931, there was a further communication (in reply to one by the attorneys for appellee, of September 11) which stated: "You are advised that the evidence submitted with your present communication is now receiving proper consideration and you will be communicated with relative thereto in due course." It was not until December 1, 1931, in a communication direct to appellee, that the bureau definitely and finally adhered to its ruling. It was within little more than a year thereafter that this suit was filed. In this situation, the statute is unavailing, not only as to the unpaid installments allowed by the court, but as to all unpaid installments.

III. Admission of Evidence.

The government offered to prove by Mrs. Pearl Anderson, that she was acquainted with the reputation of appellee. The question was, "Are you acquainted with the reputation of the plaintiff, Eva Baty Bollman, for morality during the period of 1920 to 1924? You may answer that 'yes' or 'no.'" To this the witness answered, "Yes." She was then asked, "Is it good or bad?" to which there was an objection as being "incompetent, irrelevant and immaterial." This objection was sustained and constitutes the ruling here attacked. It seems to us the court erred in rejecting this testimony, and that such rejection was prejudicial. The issue here was the open and notorious illicit intercourse. The government had introduced testimony as to the fact of repeated illicit intercourse, and such was found by the court. The government was seeking by this witness to establish the open and notorious character of this illicit intercourse. It seems to us that this can best

be done and, except where the acts themselves are openly and notoriously indulged in or there are illegitimate children, possibly can only be done by proving a reputation of that character. That was precisely what the excluded question was intended to do. Appellee argues that the prior question was merely as to "morality" and that morality is a much broader term than illicit intercourse. While the objection in the general terms of "incompetent, irrelevant and immaterial" is broad enough to cover the matter as suggested by appellee, yet this is a somewhat technical view which is hardly applicable to the circumstances of this case. Here, there was no issue as to any phase of morality except illicit intercourse. The minds of the parties, of the court, of counsel, and of the witness were all aimed in that direction only. There is no indication in the objection or in the ruling that the reason for sustaining the objection was that the qualifying question was too broad. In this situation, it seems improper to exclude this evidence, and that such exclusion was prejudicial.

## Conclusion.

The case should be and is reversed and remanded for a new trial because of the exclusion of this evidence.