**Sevara H. DE PUSANA and Elias Pusana, Plaintiffs,**

*v.*

**UNITED STATES of America, Defendant.**

Civ. A. No. 2040-55.

United States District Court
District of Columbia.
Civil Division.
July 15, 1958.

Claude L. Dawson, Washington, D. C., for plaintiffs.

Peter C. Charuhas, Dept. of Justice, Washington, D. C., for defendant.

**YOUNGDAHL, District Judge.**

Plaintiffs seek to recover $5,000 National Service Life Insurance under 38 U.S.C.A. § 802(d) (3) (B) of Lorenzo H. Pusana who was killed in a Japanese prison camp on May 27, 1942.

The Government interposes two defenses to plaintiffs' cause of action: (1) that plaintiffs are barred by the statute of limitations, 38 U.S.C.A. §§ 445, 817 and (2) that the plaintiffs in this case, the mother and father of the deceased veteran, were not dependents entitled to recover under the act.

(1) Plaintiffs' cause of action, which had to be filed within six years, began to run as of the time of their son's death, May 27, 1942. Their suit was not filed until May 6, 1955, a time-span from the date of death of twelve years, eleven months and twenty-one days.

Plaintiffs, however, filed a claim with the Veterans Administration on January 17, 1947, and it is conceded that until there has been a final disposition of this pending claim, the statute of limitations is suspended. The Government contends that the date of denial by the Board of Veterans Appeals was October 24, 1952, and while this would result in a suspension of the suit of five years, nine months and seven days, plaintiffs' suit would still be filed some fourteen months too late. Plaintiffs argue that no final disposition was made—which would start the statute of limitations running once more—until January 28, 1954, and, therefore, the suit was filed in time.

The evidence discloses that plaintiffs first filed a claim for their son's insurance on January 17, 1947. It was denied in December, 1951, and plaintiffs appealed. This appeal was denied and plaintiffs were so notified on October 24, 1952—the date the Government contends was the final disposition of the claim. This letter informed plaintiffs that their claim was denied because they "have not shown that they had an income inadequate for their reasonable support and maintenance at the time of the serviceman's death", and, therefore, they "are not shown to have been dependent as of the date of the serviceman's death."

On January 16, 1953, quite promptly, considering the fact that plaintiffs are residents of the Philippines and neither one can read or write English, plaintiffs

wrote a letter to the President of the United States again asserting their claim. This letter was referred to the Veterans Administration.

The Veterans Administration, on February 11, 1953, answered as follows:

" * * * The decision of the Board of Veterans' Appeals in affirming the denial of your claim for gratuitous National Service Life Insurance is final based on evidence then of record and your claim may not be reopened unless you have new and material evidence to present to the Veterans Administration that would prove your dependency for the above period and which evidence you have not heretofore furnished the Veterans Administration in support of your claim. Upon receipt of any new and material evidence concerning your income status for the above period prompt consideration will be given your claim for gratuitous National Service Life Insurance."

As a result of this letter, female plaintiff furnished a medical certificate attesting to the sickness of her husband during the period in question and an affidavit from her brother, Jose Hate, from whom plaintiffs had borrowed $500.

On May 28, 1953, the Veterans Administration sent the following letter:

" * * * It is noted that you previously appealed to the Board of Veterans Appeals in connection with the disallowance of your claim for gratuitous National Service Life Insurance as dependent parent and that the Board denied your appeal on the ground that you were not dependent at the time of the veteran's death. The evidence which you have submitted has been carefully considered together with all the other evidence on record and it is hereby determined that no change in the prior disallowance of your claim for insurance is warranted."

Plaintiffs then submitted certificates of the Provisional Treasurer and Regis-ter of Deeds to prove they did not own any real property. Female plaintiff also submitted her own affidavit and the affidavit of a disinterested party.

On January 28, 1954, the Veterans Administration sent a letter to plaintiffs, the last sentence of which is as follows:

"The additional evidence submitted by you has been carefully considered together with all other evidence of record and it has been determined that no change in the prior disallowance of your claim is warranted."

It will be noted that this indicates the Veterans Administration appears to have considered the matter open and reviewed all of the evidence before arriving at the decision in this letter.

■ The Government contends that the correspondence after October 24, 1952 has no bearing on the issue of the running of the statute of limitations; that the answers on the part of the Veterans Administration were merely courteous replies of no legal significance. The law on this point in the District of Columbia was established in the case of Rosario v. United States, 1939, 70 App.D.C. 323, 106 F.2d 844, 848, where the Court quoted with approval the following language:

"However, the record shows further communications establishing that there were continued negotiations between claimant and the government with a view to having this action set aside, and that such negotiations were permitted by the bureau, and, in a sense, participated in by it. Those communications clearly show that this effort to reopen the matter was not finally closed by the bureau until December 1, 1931. We hold that so long as this order was under serious discussion in the bureau and until it finally declined to reopen the matter the order should not be deemed final for application of limitations against suit. * * * So long as the bureau treats or acts in a manner which

would lead the claimant reasonably to believe that it is holding the matter open, we think it would be unjust to regard it as closed by the first order. The bureau can at any time definitely terminate such proceedings by stating that it declines to reopen and that its order is final." United States v. Bollman, 8 Cir., 73 F.2d 133, 135.

The Court feels that in this case both the plaintiffs and the Veterans Administration appear to have assumed the issue was still open. In this situation the Court is of the opinion that the Rosario doctrine is applicable. If this were not the case, it would be possible for the Veterans Administration to mislead unsuspecting claimants by holding out the possibility of changing its decision and obviating the necessity of court action.[1]

The Court holds that the statute of limitations was suspended until January 28, 1954 and, therefore, plaintiffs' suit should be determined on the merits.

The Court notes, further, the opinion filed by the Commissioner of Veterans Cases on defendant's motion to dismiss the complaint. In that opinion the Commissioner held the suit was filed in time, since the statute of limitations had been tolled during the war, and, therefore, did not begin to run until September 12, 1945. This was in accordance with the almost unanimous view, until the recent case of Soriano v. United States, 1956, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306, where the United States Supreme Court held otherwise.[2] That case arose out of a claim to be filed against the United States in the Court of Claims. 133 Ct.Cl. 971. In its decision the Supreme Court concerned itself with the jurisdiction of the Court of Claims. Whether that opinion was meant also to hold that war did not toll the statute

of limitations in the cases of other claims filed under other statutes is unclear and not necessary for this Court to determine. This Court mentions the problem to question whether the reasoning of the Commissioner might still be applicable to provide an alternative ground for the Court's holding.

■ (2) The Court now reaches the merits of the issue: whether plaintiffs were in fact dependents of the deceased veteran. The test of dependency in this context is whether the plaintiffs in fact relied upon the deceased for the reasonable necessities of life, in whole or in part, or whether they had sufficient income to provide for their reasonable support and maintenance at the time of the serviceman's death and three months prior. VA Reg. 1057, 38 CFR Cum. Supp., Section 2.1057.

The evidence discloses that plaintiffs relied upon their son's services and earnings from April, 1941, when he finished school and began to work with his father in the business of buying and selling fish, until November, 1941, when he entered service. A month later the plaintiffs evacuated and lived for the duration on sacks of rice and a few other staples they salvaged.

It appears clear that even before that time plaintiffs were existing on an austerity regime. Plaintiffs' income derived from a sharecropping arrangement in which they participated. The proceeds from the harvests, which took place twice a year, fluctuated somewhat but seemed never to have been more than $26 a harvest. For their daily subsistence they depended upon their fishing trade, a business which brought in one peso, or fifty cents, a day, at the then current rate of exchange. Their son, the deceased, also earned one peso

1. The Government relies upon Neely v. U. S., 4 Cir., 1940, 115 F.2d 448 and Simmons v. United States, 4 Cir., 1940, 111 F.2d 618. But these cases specifically reject the language of the Rosario decision. In these circumstances the Court

must follow the District of Columbia Court of Appeals' holding.

2. The previously decided cases are cited and discussed in Note, Does War Toll the Statute of Limitations 57 Col.L.Review 1140 (1957).

a day and turned all of this over to his mother for the family's livelihood.

It is conceded, and the Court so finds, that in other respects the circumstances surrounding Lorenzo H. Pusana's death qualified him for Government insurance under 38 U.S.C.A. § 802(d) (3) (B).

The Court finds, therefore, after a careful consideration of the evidence and a review of the records in the case, that plaintiffs were the dependents of the deceased veteran, and renders judgment in their favor.

Counsel will present the appropriate order.