**Benita Abrian vda DE LANO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 3214–58.

United States District Court District of Columbia.

June 25, 1959.

George Cochran Doub, Asst. Atty. Gen., Russell Chapin, Peter C. Charuhas, Robt. Wang, Dept. of Justice, Washington, D. C., Oliver Gasch, U. S. Atty., District of Columbia, Washington, of counsel, for defendant.

Henry F. Lerch, Washington, D. C. (Wallace & Lerch, Washington, D. C.), for plaintiff.

McGUIRE, District Judge.

Plaintiff's motion for summary judgment granted.

This is an action brought for the resumption of insurance benefits payable by the Veterans Administration pursuant to the National Service Life Insurance Act, 38 U.S.C.A. § 801 et seq. (1954 ed.). *Inter alia,* the pertinent section of the statute provides:

> "* * * that payments hereunder shall be made only to the following beneficiaries and in the order named—
>
> (A) to the widow or widower of the insured, if living *and while unremarried*; * * *" [Italics supplied] (38 U.S.C.A. § 802(d) (2).

The plaintiff is the widow of one Roque Lano, formerly a member of the Philippine Scouts, who was killed in action at Bataan early in 1942. At the termination of the war, she applied for and was granted the benefits alluded to above. However, as of May 1, 1958, these payments were ordered discontinued by competent authority because, in its opinion, the plaintiff was no longer the unremarried widow of the deceased serviceman. Essentially, the reason advanced for the discontinuation of the payments was based on the plaintiff's admission of living with another man as husband and wife since November 1956, and to having borne his child in August 1957. An appeal to the Veterans Administration was duly noted, and on July 15, 1958, the Board of Veterans' Appeals denied the appeal. This action followed.

The right to the resumption of payments admittedly turns on the meaning of the word "unremarried" as used in the statute.

■ Common-law marriage, as such, is not recognized in the Philippines; that is admitted. And the law of that Republic governs in the instant situation. Furthermore, the Government admits that cohabitation alone is not proof of marriage. However, it does contend that in the Philippines there arises a legal presumption that a man and woman living together as husband and wife *have* entered into a lawful marriage, (Sison v. Ambalada, 30 Phil. 118 (1915)) and that before the plaintiff can prevail she must overcome this presumption. Assuming this to be an accurate statement of the law, the Court concludes in the circumstances that the plaintiff has met the challenge of this legal presumption because the presumption is not well founded. A presumption will not be construed in such a manner as to extend its application beyond the realm of reasonable probability or certitude. Fresh v. Gilson, 1842, 16 Pet. 327, 41 U.S. 327, 10 L.Ed. 982.

■ Regardless of the fact that the plaintiff admitted in a sworn statement before the Veterans Administration field examiner (Exhibit A) that she and one Jose Solivan have lived together as hus-

band and wife continuously since November 1956, and as a result of this relationship an infant was born, it is well to observe that there is more in this statement than what is in effect an admission of illicit behavior on the part of the plaintiff. She categorically denies any marriage ceremony, either canonical or civil, to Solivan. The alleged husband also denies any ceremonial union. Furthermore, the existence of any understanding or agreement of a ceremonial marriage is strenuously protested. The Court is of the opinion that the plaintiff has best described the nature of this relationship: "We decided to live as husband and wife even without getting married." This sort of relationship does not constitute a lawful marriage in the Philippines. As conceded above, the Philippines have not and do not recognize common-law marriages. In the Philippine Digest (1927) Vol. 4, p. 2991, "Common Law Marriages", the following statement is made:

"32. No common law marriage has ever been recognized in the Philippines. Under Spanish law no valid marriage could exist unless some ecclesiastical or civil functionary intervened in its celebration. * * *"

Nevertheless, the Government relies strongly on Sison v. Ambalada, supra: that there is a legal presumption that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage. Code of Civil Procedure, the Philippines, Sec. 334, No. 28. But it must be noted, however, that in the Sison case there was the necessary qualification to the legal presumption of lawful marriage, namely, that this man and woman were "united in lawful canonical marriage."[1] This presumption the defendant in that case was unable to overcome, notwithstanding the absence of the marriage certificate, because there was an overwhelming preponderance of evidence to support the legal presumption of a lawful canonical marriage. Since the Government in the

instant cause has introduced no evidence of either a canonical or a civil marriage, as was introduced in the Sison case, then the legal presumption of lawful marriage cannot be well taken.

Certainly the Government does not suggest that the Court make a moral judgment as to the propriety of the plaintiff's conduct. "Plaintiff's right to recover is dependent upon her legal status, not upon her morals, her worthiness, nor her social standing. The Act of Congress under which the action is maintained contains no limitations of this character." Rittgers v. United States, 8 Cir., 1946, 154 F.2d 768, 772. The Court concludes that according to the law of the Philippines, the plaintiff is in fact the "unremarried" widow of the deceased serviceman.

Order accordingly.