**Eugenia Arpon Vda de SAMALA,**
**Plaintiff,**
v.
**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 2867–59.**

United States District Court
District of Columbia.

May 5, 1960.

Henry F. Lerch, Robert L. Pillote, Washington, D. C., for plaintiff.

George Cochran Doub, Asst. Atty. Gen., Russell Chapin, David V. Seaman,

Dept. of Justice, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

This case is before the Court on the defendant's motion to dismiss or in the alternative for summary judgment and plaintiff's motion for summary judgment.

The material facts are not in dispute. On April 30, 1942, Ysidoro Samala, a member of the Philippine Scouts, United States Army, died while a prisoner of war in the Philippines. His widow, the plaintiff here, filed a claim on March 15, 1946, with the Veterans' Administration for gratuitous insurance benefits due her as the unremarried widow of a deceased serviceman.[1] Monthly payments of $21.-55 were authorized, which plaintiff received until October 29, 1953, when the Veterans' Administration suspended all payments to her, effective September 30, 1953, pending an investigation of her marital status. The investigation resulted in a decision by the Veterans' Administration to terminate payments on the ground that the plaintiff could not be considered the "unremarried widow" of the deceased serviceman. Plaintiff appealed to the highest administrative authority, the Board of Veterans' Appeals; on May 3, 1955, her appeal was denied because "the burden of proof is upon the claimant to show by clear and convincing evidence that the remarriage indicated by her actions has not taken place" and the evidence showed that the

plaintiff had been living with one Raymundo Camero "in an ostensibly marital relationship". The Board's decision concluded: " * * * This decision constitutes final administrative denial of the insurance claim."

Plaintiff has admitted that she gave birth to a child of Raymundo Camero in 1945 but has steadfastly denied remarriage—to Camero or anyone else. No ceremonial marriage is known to have been entered into by the plaintiff but the Government has taken the position that "remarriage", in the context of veterans' benefits, means something more than a ceremonial marriage.

■■ Marriage in the Philippines, as its Spanish origins clearly portend, must be ceremonially accomplished to be legally recognized; it is not possible to marry by agreement *per verba de praesenti*, followed by unconcealed cohabitation—that is, by a common-law marriage. Sinlao v. United States, note 1, supra; and see the opinion of McGuire, J., in De Lano v. United States, D.C., 183 F.Supp. 781. The Veterans' Administration was in error in considering the plaintiff other than an unremarried widow and terminating her benefits. This Court, however, cannot remedy the error because the action is barred by the six-year statute of limitations. 38 U.S.C. § 784(b) (1958 Ed.).[2]

■ Plaintiff's claim accrued at the death of her husband, Ysidoro Samala, on April 30, 1942.[3] More than three

---

[1]. 54 Stat. 1009, § 602(d) (3) (B) of the National Service Life Insurance Act of 1940, 38 U.S.C. § 802(d) (3) (B) (1952 Ed.). § 602(d) (2) of the Act, 38 U.S.C. § 802(d) (2) provided:
" * * * payments hereunder shall be made only to the following beneficiaries and in the order named—
"(A) to the widow or widower of the insured, if living and while unremarried;
* * *"
And see note 1 in Aguilar v. United States, D.C., 183 F.Supp. 598.
To the extent that a suit for death compensation benefits was intended, 38 U.S.C. §§ 101(3), 321, 322 (1958 Ed.), the complaint must be dismissed because

the Administrator's determination is not reviewable. See 38 U.S.C. § 211(a) (1958 Ed.) ; Sinlao v. United States, 1959, 106 U.S.App.D.C. 263, 271 F.2d 846, disallowing any suit at all, which of course includes those brought within six years.

[2]. Set out in Aguilar v. United States, id. at note 2.

[3]. The six-year limitation period runs from the death of the insured and not from the due date of each monthly installment payment. Cole v. United States, 1940, 72 App.D.C. 118, 112 F.2d 203, certiorari denied 1940, 311 U.S. 647, 61 S.Ct. 31, 85 L.Ed. 413, rehearing denied 1940, 311 U.S. 726, 61 S.Ct. 130, 85 L.Ed. 473.

years and ten months elapsed before March 15, 1946, when the plaintiff filed her claim with the Veterans' Administration and this period of time "counts" towards the running of the six years. Aguilar v. United States, supra, note 1. Between March 15, 1946 (claim filed) and May 3, 1955 (the Board of Veterans' Appeals' denial of plaintiff's appeal), it is clear that the express language of § 784(b) suspended the statute of limitations. Suit was filed on October 13, 1959, some four years and five months after the administrative denial of May 3, 1955, and adding this period of time to that which the plaintiff had already consumed prior to filing her claim (three years and ten months), it can be seen that some eight years and three months of "countable" time ran prior to the institution of this lawsuit, making it late by about two years and three months.

The plaintiff argues, however, that her administrative appeals were not finally denied by the Veterans' Administration until April 14, 1959, and thus the statute ran for only four years and four months prior to the institution of suit. Between May 3, 1955 and April 14, 1959, the plaintiff sent numerous letters to the Veterans' Administration which were always answered and it is this correspondence which the plaintiff contends gives rise to the applicability of the doctrine of continuing negotiations [4] and the consequent suspension of the statute of limitations until April 14, 1959.

In other words, the termination date of the administrative action (and thus the end of the suspension of the statute of limitations) is in dispute: plaintiff argues the suit is timely on the theory that under the circumstances of this case the last letter of the Veterans' Administration, dated April 14, 1959, constitutes final administrative action, whereas the Government argues that the May 3, 1955, denial of the Board of Veterans' Appeals was the end of the administrative action.

In De Pusana v. United States,[5] this Court pointed out that the doctrine of continuing negotiations must be employed in appropriate situations or else "it would be possible for the Veterans Administration to mislead unsuspecting claimants by holding out the possibility of changing its decision and obviating the necessity of court action." [6] But the Court, of course, did not say that *any* letter from the Veterans' Administration would suffice to bring the doctrine into play.

And see Annotation, 1955, 44 A.L.R.2d 1189 and note 3 in Aguilar v. United States, Id.

4. In United States v. Bollman, 8 Cir., 1934, 73 F.2d 133 the plaintiff's insurance benefits were stopped more than six years prior to her bringing suit. The Court said at page 135 through Stone, J.:
"However, the record shows further communications establishing that there were *continued negotiations* between claimant and the government with a view to having this action set aside, and that such negotiations were permitted by the bureau and, in a sense, participated in by it. * * * We hold that so long as this order was under serious discussion in the bureau and until it finally declined to reopen the matter the order should not be deemed final for application of limitations against suit. Obviously, it is to the interest of all parties that suits of this character be avoided. While the claimant may treat the action of the government in its order of disagreement as final, yet it may continue to discuss and contest the matter before the bureau. So long as the bureau treats or acts in a manner which would lead the claimant reasonably to believe that it is holding the matter open, we think it would be unjust to regard it as closed by the first order. The bureau can at any time definitely terminate such proceedings by stating that it declines to reopen and that its order is final." (Emphasis supplied.)
And see Rosario v. United States, 1939, 70 App.D.C. 323, 106 F.2d 844, certiorari denied 1939, 308 U.S. 606, 60 S.Ct. 143, 84 L.Ed. 507. But cf. Dyer v. United States, 1946, 81 U.S.App.D.C. 4, 154 F. 2d 14, certiorari denied 1946, 329 U.S. 722, 67 S.Ct. 66, 91 L.Ed. 626.

5. D.C.D.C.1958, 164 F.Supp. 672, 675.

6. Id., at page 675.

Out of courtesy, the agency answers letters it receives. To say that the statute of limitations is always automatically suspended would be to say that an unsuccessful claimant can keep a claim alive—perhaps indefinitely—by the simple tactic of writing a letter and asking for reconsideration. Thus it is clear that each case must depend upon its own factual makeup.

Having carefully examined the entire file of the Veterans' Administration,[7] the Court is of the opinion that the doctrine of continuing negotiations is not applicable here since it would not have been reasonable for the plaintiff to conclude from the replies of the Veterans' Administration that her claim was still under consideration.

The first letter plaintiff wrote to the Veterans' Administration was dated June 18, 1955. It asked for *reconsideration* and argued that plaintiff had never remarried and that the illegitimate child was "because of circumstances * * * during an emergency period." The Veterans' Administration received the letter on August 9, 1955 and replied on September 2, 1955:

"This is in reference to your recent letter concerning your appeal for gratuitous insurance and compensation benefits.

"The requirements of the law and the basis for the denial of your claims were fully set forth in the Board's decision. The matters you have presented were, in substance, before the Board at the time of its decision and received full consideration in the course of appellate review. As was pointed out in the Board's decision, the evidence in its entirety clearly showed that you lived in an ostensibly marital relationship after the veteran's death. Although you denied having legally remarried, the evidence failed to establish continuance of your unremarried status for the purpose of receiving gratuity payments as the veteran's unremarried widow under laws administered by the Veterans Administration. In view thereof, there was no basis for the grant of the benefits sought and your appeal was denied. No further action by the Board is indicated."[8]

The letters that followed were similar to the above. Were the Court to disregard pertinent legal principles in an effort to aid that most sympathetic of litigants— an unremarried widow—the only peg upon which the doctrine of continuing negotiations could be hung is the statement that appears in the final two letters of the Veterans' Administration. The letter of October 28, 1958, reads:

"This is in reply to your recent letter relative to the discontinuance of your claim for death compensation.

"The records show your claim was discontinued for the reason that you may no longer be recognized as the unremarried widow of the veteran. Furthermore, your appeal from this disallowance action was denied by the Board of Veterans Appeals.

7. Initially, only the letters of October 28, 1958 and April 14, 1959, were in the record. To have a complete picture, the Court requested counsel to supply the missing letters and this was accomplished by stipulation filed April 15, 1960.

8. This flat rejection is in marked contrast to the virtual solicitation of new evidence from the claimant in De Pusana, supra, note 5. The first letter from the Veterans' Administration in that case read:
"* * * The decision of the Board of Veterans' Appeals in affirming the denial of your claim for gratuitous National Service Life Insurance is final based on evidence then of record and your claim may not be reopened *unless you have new and material evidence* to present to the Veterans Administration that would prove your dependency for the above period and which evidence you have not heretofore furnished the Veterans Administration in support of your claim. *Upon receipt of any new and material evidence* concerning your income status for the above period *prompt consideration will be given your claim* for gratuitous National Service Life Insurance." (Emphasis supplied.)

*"Further consideration has been given all the evidence on file. It has been determined that the evidence is not new and material or contrary to that already of record and therefore no change is warranted in the disallowance action of your claim. The denial action of your appeal by the Board of Veterans Appeals constitutes final administrative determination."* (Emphasis supplied.)

The last letter, dated April 14, 1959, reads:

"This has reference to your letter of February 5, 1959 addressed to the President of the United States. Since the President's onerous duties precludes his answering your letter, it has been referred to this office for reply.

*"The statements in your letter which were considered in connection with all other evidence on file* does not warrant any change in the prior determination of this administration." (Emphasis supplied.)

To show that these statements did not mislead the plaintiff into believing her claim was still pending, it is only necessary to point out that after receiving the October 28, 1958, letter, the next action taken by the plaintiff was to write to the President of the United States and "vehemently protest the arbitrariness" with which the Veterans' Administration acted. The President forwarded her letter to the Veterans' Administration which answered with the April 14, 1959, letter, set forth above. Obviously plaintiff was not misled by this letter because after receiving it she instituted this suit. Moreover, since no letter prior to October 28, 1958, could reasonably be said to have misled the plaintiff, the letter of that date and the one of April 14, 1959, are of no aid to the plaintiff, even if it is assumed they misled her, since the statute had run for some seven years and three months by October 28, 1958.

In the points and authorities filed with the court, counsel for plaintiff states:

"The filing of the claim tolled and suspended the running of the statute until *final administrative denial* of her claim on April 14, 1959." (Emphasis supplied.)

If the April 14, 1959, letter is sufficient to indicate the Veterans' Administration's unwillingness to reconsider the plaintiff's claim (and the Court agrees that it is), why is not the less ambiguous letter of June 18, 1955, also so sufficient?

The Court concludes that plaintiff's benefits were improperly terminated but that this Court has no jurisdiction to remedy the situation. The Administrator, not being similarly hampered, may desire to correct his error.

Defendant's motion is granted; plaintiff's motion is denied. An order accompanies this memorandum.